DEVEREAUX & MESERVE *v.* FAIRBANKS AND OTHERS.

[IN CHANCERY.]

*Mortgage. Homestead.*

In 1850, before the Homestead Act took effect, F. executed a mortgage of certain premises, conditioned for the payment of certain notes given for the purchase-money thereof. In 1875, the petitioners, who then had attachments and held subsequent mortgages on the premises, paid certain of said notes, and took an assignment of the mortgage by which they were secured, and which they now sought to foreclose— F. being in possession and claiming a homestead. *Held*, that as the mortgage was of the entire premises, including the homestead, the homestead should bear its proportion of the mortgage debt.

PETITION FOR FORECLOSURE. The petition alleged that on September 16, 1850, Morris C. Fairbanks, one of the petitionees, duly executed a mortgage deed of certain premises in Woodstock to Lyman Mower, conditioned for the payment of the purchase-money thereof specified in nine promissory notes for $100 each, payable respectively in two, three, &c., years from April 1, 1851 ; that the last three of said notes had never been paid ; that the pe-

titioners, having subsequent mortgages and attachments on the premises, paid Mower the sum due on his mortgage, whereupon, on April 14, 1875, Mower transferred said notes and mortgage to them, and they became the lawful owners thereof; and that Albert G. Brown, Morvilla Chamberlain and Augustus P. Whitney had some interest in the premises.

Said Fairbanks filed an answer and a cross-bill. Each alleged that said mortgage covered the dwelling-house and land connected therewith, owned and occupied by said Fairbanks as a homestead; that said Fairbanks had a wife and minor children, and claimed said premises as a homestead under the statute; that the petitioners became the owners of the premises by foreclosure of another mortgage against said Fairbanks, subject to said Fairbanks's homestead right therein, and that the premises were worth $2500 or more. Both cross-bill and answer prayed that if the Mower mortgage should be held to cover said Fairbanks's homestead right in the premises as well as the residue thereof, the same might be apportioned, and said Fairbanks be decreed to pay such proportion thereof as his homestead right was of the entire premises; that masters might be appointed to apportion and set out, &c.; and for general relief. The answer was traversed, and the cross-bill demurred to.

On hearing at the May Term, 1876, the court, BARRETT, Chancellor, declined, *pro forma*, to order the mortgage to be apportioned, and adjudged that the petitionees should pay the full amount due on said mortgage, with costs, or be foreclosed. Appeal by the petitionees.

*Norman Paul*, for the petitioners.

The mortgage sought to be foreclosed was executed prior to the time the homestead law took effect, and by the terms of that law it applies to this case. Acts of 1849, No. 20, s. 1; Gen. Sts. c. 68, s. 7; *Simonds* v. *Powers's Estate*, 28 Vt. 354. The mortgage was given at the time the purchase was made, to secure the purchase-money. By the terms of the statute, Fairbanks is debarred from setting up any claim to a homestead right against the mortgage. Acts of 1849, No. 20, s. 5; Gen. Sts. c. 68, s. 10;

*Wood* v. *Adams,* 35 Vt. 300 ; *Perrin, Admr.* v. *Sargeant,* 33 Vt. 84.

The petitioners, as attaching creditors, having paid the outstanding mortgages to make their attachment available, such payment is the exercise of a legal right, and is not a voluntary payment. *Chandler* v. *Dyer,* 37 Vt. 345. The petitioners thereby became substituted to all the rights and interests of the original mortgagee. 2 Story Eq. Jurisp. s. 1023 ; 1 Hilliard Mort. 546 ; *Warren* v. *Warren,* 30 Vt. 530.

Fairbanks cannot sustain his claim for contribution. It is not only barred by the statutes relating to homestead, but by every rule of equity. There was no merger of title. In order to effect a merger, the right previously had and the one acquired must be precisely co-extensive, and there must be no intervening, outstanding right. 1 Hilliard Mort. 538, 539, 542 ; *Evans* v. *Kimball,* 1 Allen 240.

When an owner of an equity of redemption pays off a prior mortgage and takes an assignment thereof, the legal and the equitable title do not unite, if it is for the interest of such person to keep them separate. 1 Hilliard Mort. 538, 546, 550 ; *Tichout* v. *Harmon,* 2 Aik. 37 ; *Wells* v. *Morse,* 11 Vt. 9 ; *Walker, Smith & Co.* v. *Baxter,* 26 Vt. 710 ; *Walker* v. *King,* 44 Vt. 601 ; *Spaulding* v. *Crane,* 46 Vt. 292 ; *Loud* v. *Lane,* 8 Met. 517 ; *Gibson* v. *Crehore,* 3 Pick. 475 ; *Swift* v. *Kroemer,* 13 Cal. 526.

*W. E. Johnson* and *W. C. French,* for the petitionees.

The petitioners by foreclosing their other mortgage, extinguished and merged the present mortgage either altogether or *pro tanto.* Equity will not compel Fairbanks, who owns but one fifth of the premises, to pay a mortgage to the petitioners that covers the whole premises, when the petitioners own four fifths. 1 Hilliard Mort. 521, 522 ; *Freeman* v. *Paul,* 3 Greenl. 260 ; *James* v. *Morey,* 2 Cow. 246 ; *Klock* v. *Cronkhite,* 1 Hill. 107 ; *Gredun* v. *Astor,* 3 Johns. Ch. 58 ; *Bullard* v. *Leach,* 27 Vt. 491. It follows that the court must refer the matter to a master, to apportion the mortgage. *James* v. *Morey,* 2 Cow. 246 ; Gen. Sts. c. 68, ss. 2, 5, 6.

The principle of *Lyman*, *admr.* v. *Lyman*, 32 Vt. 79, is applicable here.

The opinion of the court was delivered by

POWERS, J. The Mower mortgage described in the petition was executed before the Homestead Act took effect. As against such mortgages, no homestead exemption can exist.

The petitioners, as attaching creditors and mortgagees of the premises encumbered by the Mower mortgage and subject to the homestead right of the defendant, have paid the Mower mortgage, and taken a transfer of it and the debt secured by it to themselves, and now claim to enforce the full amount of the debt against the homestead.

As attaching creditors, they could not reach that parcel of the premises constituting the defendant's homestead ; they could only get the defendant's interest in the residue. As mortgagees, they got no title to the homestead parcel, because the defendant's sole deed would convey none ; but his deed would convey his interest in the residue. Their lien as levying creditors, and their lien as mortgagees, is limited to the residue, and in either capacity, they take the residue *cum onere*—they take the defendant's interest in it as they find it, burdened with the outstanding Mower mortgage ; they stand in the defendant's shoes as to the residue.

As between the petitioners and the defendant, each owns a parcel of land upon which rests a common burden. In equity, each parcel must contribute ratably to its discharge.

The petitioners did not buy the Mower mortgage as volunteer purchasers, but paid it in virtue of their privity to the estate upon which it rested, and to save their interest. Their estate was obligated to pay its equitable share of the debt, and to that extent they paid what they were bound and ought to pay. In addition to that, they paid what the homesteader was bound and ought to pay, and the latter sum may be charged upon the homestead.

If the argument is sound that the petitioners are to be treated as volunteers buying the Mower mortgage for value, the rule is the same. They seek to enforce it against the defendant's share of the common property. He may interpose the objection that their

share should contribute with his to pay the debt, and such contribution would be ordered, and the decree would be limited to the same ratable share as before.

The whole Mower debt cannot, in equity, be charged upon the homestead parcel, because it does not, in equity, wholly rest upon that parcel. The petitioners should and do get the defendant's interest in the residue, under the rule we adopt. They should not get more. They cannot reach the homestead because it happens that the defendant has not fully paid for the residue. They can no more compel the homesteader to give them an indefeasible title to the residue, than can the homesteader compel them, under like circumstances, to give him such title to the homestead parcel.

This case is identical in principle with *Lamb* v. *Mason, ante,* 345, and must be decided upon the same grounds.

The decree of the Court of Chancery is reversed, and cause remanded for decree in accordance with the views above expressed.