CASEBOLT v. DONALDSON et al., Appellants.

1. Homestead Law: PRINCIPLES OF CONSTRUCTION. The homestead is a statutory right—a strictly legal right—and while the act should be liberally construed to effectuate its benign purpose, yet equitable principles, other than those recognized by the act, cannot be invoked by one claiming a homestead right.

2. Deed of Trust on Homestead: SURPLUS PROCEEDS OF SALE: SETTING APART HOMESTEAD. Judgment having been obtained against a man who was the head of a family, execution issued and was levied on the land on which he resided with his family, and it was sold under the execution without any attempt on his part to have a homestead set apart to him. Shortly before this the same land had been sold under a deed of trust, which he had given to secure the payment of a debt, for more than the amount of the debt. The judgment creditor having garnished the surplus in the hands of the purchaser to satisfy an unpaid balance of his execution, and the debtor having set up a claim to the same money as the proceeds of his homestead; Held, that the creditor was entitled to the money,

1st, Because the debtor had failed to claim his homestead at the proper time; 2nd, Because the law does not confer a homestead right in anything but land—not in the proceeds of the sale of land.

3. **Land Titles**: CONFLICTING PURCHASES: GARNISHMENT OF PROCEEDS. The land of a debtor was sold successively by two of his creditors— by one under execution, by the other under deed of trust. Each creditor purchased at his own sale—the judgment creditor for less than the amount of his debt, and the other for more than the amount of his debt. The judgment creditor having garnished the surplus of the purchase money in the hands of the other; *Held*, that it was the property of the common debtor, and the judgment creditor was entitled to have it applied in payment of the balance due him, no matter which sale carried the title to the land.

*Appeal from Ray Circuit Court.*—Hon. GEORGE W. DUNN, Judge.

*C. T. Garner & Son* for respondent, argued that a party may lose his right of homestead by making no claim to it, or by acts which amount to a waiver or estoppel of his claim; also that there is no homestead in personalty.

*Donaldson & Farris* for appellants.

HENRY, J.—George Casebolt obtained a judgment against John B. Paul, in the circuit court of Clinton county, and had an execution issued thereon directed to the sheriff of Ray county, which was levied upon the w. ½ of the n e qr. of Sec. No. 2, township No. 53 of range 26, in said county, the property of said Paul, upon which, with his family, he resided. The land was sold under the execution, and was purchased by Casebolt in February, 1876. Paul executed a deed conveying the said land to Thomas J. Dodd, as trustee, to secure the payment of a note for $200, held against him by Donaldson and Farris. Whether the judgment in favor of Casebolt, or the deed of trust, was prior in date does not appear, nor is it material. On the 28th day of January, 1876, Dodd sold the land in pursuance of the terms of the deed of trust, and Donaldson and Farris purchased it at the price of $550, and after sat-

isfying their debt and the expenses, they owed of said purchase money $299.75. Casebolt had a garnishment served on Donaldson and Farris, in order to subject the amount due from them to the payment of the balance of his judgment. They answered interrogatories, setting forth the foregoing facts, and alleging that Paul claimed the money under the homestead law, and denying Case-bolt's right to the money, unless he relinquished his claim to the land under the execution sale. Paul filed an inter-plea, claiming the money under the homestead law. The questions presented are, whether the homestead law ex-empted the money from Casebolt's execution, and if not, whether Casebolt, having purchased the same land and claiming it, as above stated, was entitled to it as against Donalson and Farris.

When the execution in favor of Casebolt was levied upon the land in question, Paul did not designate, under Sec. 2 of the homestead act, the part thereof to which the exemption should apply, nor did the sheriff, as provided in that section, appoint three disinterested appraisers to fix the location and boundaries of such homestead. No attention whatever was paid, either by the sheriff or the defendant in the execution, to the provisions of the home-stead law.

The homestead is a statutory right—a strictly legal right—and while the act should be liberally construed to effectuate its benign purpose, yet equitable principles, other than those recognized by the act, cannot be invoked by one claiming a homestead right. The statute confers the right and states the circumstances under which it shall exist; and if a very liberal construction of its terms will not embrace the claimant's demand, it cannot be admitted. The first section provides that : " The homestead of every housekeeper, or head of family, consisting of a dwelling house, appurtenances and the land used in connection therewith, not exceeding the amount and value herein limited, which is, or shall be used by such housekeeper, or

head of a family, as such homestead, shall, together with the rents, issues and products thereof, be exempt," &c. It is the dwelling house and land and rents, issues and products which are exempt—nothing else. If one who has acquired a homestead in 160 acres of land, sell off ten acres or exchange it for cattle, it certainly could not be maintained that such cattle would be exempt from execution under the homestead act. Or if he sell the whole homestead and invest the proceeds in a stock of dry goods, or any other personal property, to trade on, could he claim a homestead exemption in such personal property? While the object was to secure not only to the head of a family, but to all the members of the family, a home to live in, yet if the head of a family see proper to do so, the law does not prevent him from converting the homestead into capital to trade with, or other property which he may prefer to hold. If he sell his homestead and invest the proceeds in wild lands for speculation, there is no provision of the statute which would exempt them from liability for any debts he may owe, no matter when contracted.

There is nothing in the act protecting the proceeds of the sale of a homestead against creditors' demands, except as provided in sections 9, 10 and 11; and the provisions, "for setting out the homestead by metes and bounds"— by the sheriff when he levies an execution—by the probate court when the head of a family dies—and, whenever in any proceeding at law or in equity, it becomes necessary to sever or set out any homestead from other real estate, forbid the idea of a homestead exemption in anything but real estate. The 10th section provides for the sale of a homestead right, whenever the dwelling house and land in connection therewith exceed the value mentioned in the first section, and a severance of the homestead would greatly depreciate the value of the residue of the premises, or be of great inconvenience to the parties interested, either in the homestead or such residue. The court, on petition, is required to make such orders as may be equit-

Casebolt v. Donaldson.

able and needful, and if such homestead be sold, the court may control the investment of the proceeds in a new homestead, or their payment out of court, as in cases of the funds of married women. In this case no homestead was ever set out to the interpleader. He voluntarily conveyed the property in which he had a homestead right, to secure the debts he owed the garnishees. Under that deed the property was sold. He could not if he would, have prevented that sale. This land was converted into money, and that money cannot be treated as land, much less as a homestead. Courts of equity sometimes treat money as land and land as money, but such principles cannot be invoked by one who claims under our homestead law. If he has a right the statute alone gives it. If its terms, liberally interpreted, do not give him a right, he has none.

In regard to the second point made by them, the garnishees had no right to the money as against Casebolt, notwithstanding Casebolt bought the same land under his execution, and claimed title to it; wherever the title may have been, the $299.75 belonged to Paul. Paul could have sued the garnishees and recovered the money, although Casebolt may have acquired a perfect title by his purchase at the execution sale; and Casebolt has the same right that any other judgment creditor would have had, on garnishment proceedings, to recover the money from the garnishees. The judgment of the circuit court in favor of plaintiff, against the garnishees and interpleader, was for the right party; and, all agreeing, it is affirmed.

AFFIRMED.