THE STATE OF MISSOURI TO THE USE OF SLIGO IRON STORE COMPANY, Respondent, v. ISAAC M. MASON ET AL., Appellants.

February 12, 1884.

1. HOMESTEAD — EXECUTIONS — ATTACHMENT. — The statute empowers the sheriff to appoint appraisers to set off homestead only when execution has been levied, and does not apply to attachments.

2. —— INCUMBRANCES. — Homestead property of greater value than the statutory limitation, being so incumbered that the equity of redemption is worth less than the homestead exemption, the homestead and the non-homestead interests must support the incumbrance in the proportion that the incumbrance bears to the value of the whole property.

3. SHERIFF. — The sheriff must answer on his bond for all errors of law
whereby parties to an action are damaged.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

KRUM & JONAS, for the appellants: Upon a fair con-
struction of the statute relating to homestead, appraisers
may be appointed and homestead set apart under a writ of
attachment.— *Vogler* v. *Montgomery*, 54 Mo. 583 ; *The State
ex rel.* v. *Diveling*, 66 Mo. 379. If the homesteader was
not entitled to the equity of redemption as a homestead he
should have moved to quash the action of the appraisers
( *Creath* v. *Dale*, 69 Mo. 41) ; or have begun a direct pro-
ceeding under section 2698 of the statutes. — *Schaeffer* v.
*Bernheimer*, 9 Mo. App. 445. If the mortgage becomes
the property of the judgment creditor, under no circum-
stances can he enforce its proportion thereof against the
homestead without first subjecting the residue to the pay-
ment of the entire mortgage debt. — *La Rue* v. *Gilbert*, 18
Kan. 220.

TAYLOR & POLLARD, for the respondents : The statute
does not authorize the setting out of a homestead on a levy
of a writ of attachment. — Rev. Stats., sects. 2689 to 2692 ;
Gwynne on Sheriffs, sects. 569 and 572 ; *Kean* v. *Newell*,
1 Mo. 754 ; *Berry* v. *Burkhart*, 1 Mo. 418 ; *The State* v.
*Powell*, 44 Mo. 438 ; *The State* v. *Moore*, 19 Mo. 371 ;
*The State* v. *Shacklett*, 37 Mo. 284.

THOMPSON, J., delivered the opinion of the court.

This is an action upon the bond of the defendant as sher-
iff of the city of St. Louis. The facts are that the plain-
tiff's usee brought an action against one Daniel T. Sheehan,
by attachment. The attachment was placed in the hands
of the sheriff; was by him levied upon a piece of real estate,
the property of Sheehan, and notice of the levy was filed
in the office of the recorder of deeds. The reasonable value
of this real estate was $5,500, and it was incumbered to

the extent of $3,500 by a deed of trust. Sheehan was the head of a family, and occupied the property as his homestead. He made, through his attorney, a formal claim of homestead in the premises. The sheriff thereupon proceeded to appoint three appraisers in accordance with the provisions of the statute applicable to cases where homesteads are levied upon under execution. Rev. Stats., sect. 2690. These appraisers took an oath that they were not interested, nor of kin to any person interested, in the property to be appraised, and that they would faithfully discharge their duties as appraisers, etc. Thereafter they filed a report, setting forth that they had viewed the property; that they appraised the same at the sum of $5,500, and that it was not susceptible of partition. These proceedings took place against the written protest of the counsel of the plaintiff's usee, who stated in their protests to the sheriff: "You have nothing to do with a homestead claim in real estate on which an attachment has been levied until an execution is levied; then, and not till then, is the sheriff required to take steps to set out a homestead in the property claimed as such." After the appraisers had made their report, the sheriff executed in the recorder's office a written release of the levy. Thereafter, pending the attachment suit (which had also been levied upon personal property), and before judgment therein, Sheehan sold the real property in question and made a deed to the purchaser. By reason of this release of the levy, which enabled Sheehan to make a good title to the purchaser, the plaintiff's usee lost a portion of its demands against Sheehan; and for this, the present action is brought against the sheriff and his sureties on his official bond. The case was tried before the court without a jury, and the plaintiff had a judgment for $583.28. There is no ground for questioning the amount of this judgment, provided the principle upon which it appears to have been rendered be found correct.

From the foregoing statement it appears that the case

involves two questions : 1st.. Whether the sheriff has any authority to appoint appraisers and set off a homestead to the debtor, where the levy is that of an attachment, and not that of an execution. 2nd. Whether, in case a man's homestead in St. Louis is incumbered by a deed of trust, so that, deducting the value of the incumbrance, the value of the residue is less than $3,000, the debtor has any interest therein which is subject to attachment or execution for his debts. In other words, does the value of the homestead which is exempt from execution and attachment under the statute (Rev. Stats., sect. 2689), mean the value of the premises without reference to incumbrances, or the value of what is still termed in ordinary language, the owner's "equity of redemption," after deducting the value of the encumbrances?

1. Upon the first question, we are of opinion that the statute affords no authority for the appointment of appraisers where property claimed as a homestead is levied upon by attachment merely. The statute (Rev. Stats., sect. 2690) which provides for the appointment of appraisers, is limited to the case " whenever an execution shall be levied upon real estate," etc. As the proceeding is one which derives its authority only from the statute, it can only take place in a case provided for by the statute. The legislature evidently did not think it necessary to provide for an appraisement in the mere case of the levy of an attachment upon property claimed as a homestead, because such a levy can not be followed by a sale. No sale can take place until the attachment suit ripens into a judgment, and a special execution issues thereupon; and, then, the sale is under the execution, and not under the attachment. The attachment merely has the effect of giving the plaintiff a lien upon the premises in advance of his judgment. It does not follow from this that it is lawful for a sheriff, in levying an attachment upon real estate, to disregard a claim of homestead in the premises. The homestead law in its first sec-

tion (Rev. Stats., sect. 2689), exempts the homestead of every housekeeper or head of a family from attachment, as well as from execution. It also allows husband and wife jointly to convey or mortgage their homestead, or any part of it. This being so, it might be very oppressive for a sheriff to levy an attachment upon property which is clearly the homestead of the debtor in the attachment suit. Such a levy would operate as a cloud upon his title, and might prevent him from selling or incumbering the property, which the law allows him to do, and the right to do which might be much more important to him and to his creditors in a period of financial embarrassment than at any other time. Of course, as the law makes no provision for an appraisement where a claim of homestead is made in the case of a levy of an attachment, the sheriff must proceed to satisfy himself whether or not the claim of homestead is well founded, and whether or not the value of the property is within the limit of value prescribed by the homestead exemption, in the best way he can. It is the misfortune of his position that here, as in all other cases in the execution of process, he acts at his peril, and if he makes a mistake as to the law, he must answer for it in damages to the party injured thereby. In the present case, the sheriff undoubtedly proceeded in good faith, and upon the best view of the law which he could obtain, the question never having been settled by an authoritative decision in this state; and if he acted erroneously, his position, it must be admitted, is one of hardship; but there is no principle upon which the courts can afford him relief. Whether he acted erroneously, must depend upon the decision of the second question.

2. The second and decisive question of the case is whether the limit of the value of property which is exempt from attachment and execution as the homestead of housekeepers and heads of families, means the value of the land and improvements, without reference to incumbrances, or

whether, in case the property is incumbered, it means the value of what is termed the equity of redemption therein. The statute seems to be entirely silent on this question. It might well seem, at first blush, that the value fixed by the statute is the value of the property to the debtor. But we have come to the conclusion that the statute is not susceptible of this interpretation. If A has a limited estate in land, and B has the remaining portion of the beneficial estate, as where A and B are tenants in common, and A lives upon the land as his homestead, and claims a homestead exemption therein, it may well be, that in determining the extent of this exemption, the value of his homestead, within the meaning of the statute, is the value of his interest in the land; because this is really all that can be sold. But, under our law, a deed of trust given to secure a debt, does not pass any present estate in the land. It is a mere security for the payment of the debt. It creates a mere lien upon the property named therein; but the fee remains in the grantor. Even after condition broken, no estate in the land becomes vested in the trustee, or in his beneficiary, but the trustee becomes invested with a mere power to sell the land to raise money to pay the debt, under the terms and conditions of the deed. The phrase, "equity of redemption," which is still inaccurately used to describe the estate of the grantor in such a deed, has come down to us from the ancient common-law idea of a mortgage, which really passed the fee to the grantee, subject to a future defeasance; and what was termed the equity of redemption was merely a right to redeem, which courts of equity, by the exertion of an extraordinary jurisdiction, declared for the purposes of justice, in the very face of the contract which the parties had made. But under our ordinary deeds of trust in Missouri, there is really no such thing as an equity of redemption. The provision for a sale of the property by the trustee, instead of a forfeiture of the property, as was the case with the old common-law mortgage, satisfies

the views of justice and policy in pursuance of which courts of equity gave the right to redeem; and there is no such thing, under our law, in the absence of some special ground for the interposition of equity, such as fraud or mistake, as an equity of redemption, in the face of the the terms of a deed of trust which says that the equity of redemption shall be forever barred. On the contrary, until the execution of the power of sale granted by such a deed, the grantor remains the owner, and the full owner of the premises. The value of his interest in the premises is, in a strict sense, the full value of the premises; and a person purchasing his title and interest pays for the same the full value of the premises, except where he agrees to assume the incumbrance thereon and to pay the same, and then the value of such incumbrance is counted as a portion of the purchase-money, and deducted from the amount paid for the land to the owner of the fee.

We are confirmed in this view of the interpretation of our statute by two decisions of the supreme court of Vermont, rendered in 1877, where the same view was taken. *Lamb* v. *Mason,* 50 Vt. 345; *Devereau* v. *Fairbanks,* 50 Vt. 700. Our statute of homestead, in the particulars here under consideration, is a literal transcript of the Vermont statute; and if these decisions had been rendered prior to the year 1865, when we adopted the statute from Vermont, they would be controlling authority upon this question; because the presumption would be that our legislature, in adopting the statute of another state, intended to adopt it with the meaning placed upon it by the highest court of that state. *Skouten* v. *Woods,* 57 Mo. 380. Our legislature could not, of course, have intended, in adopting the statute of another state, to adopt any future interpretation which the courts of that state might put upon it. These Vermont cases are not, therefore, controlling authority; but they are, nevertheless, persuasive authority, weakened, it is true, by the fact that in the former of them two of the

six judges dissented.  We are, nevertheless, satisfied that the reasoning of the majority of the Vermont court places upon the statute the meaning which was intended by those who enacted it.   Some support to these views is, perhaps, derived from the decision of our supreme court in the case of *Casebolt* v. *Donaldson* ( 67 Mo. 308 ), where it was held, that in case a homestead is sold under a deed of trust given to secure a debt, and it produces at the sale more money than is enough to discharge the debt and the costs of executing the trust, this surplus is not exempt as proceeds of the homestead in favor of its late owner, but is subject to garnishment by his creditors.   This decision goes to show that it is the homestead, the thing itself, the land and the improvements thereon, which the law exempts, and not the amount of money which would accrue to its owner after the sale of the property to satisfy existing liens thereon.   So far as I have met with decisions which speak upon this question, they confirm the view that the homestead exemption is not the exemption of a mere pecuniary value — a mere right to so much money issuing out of land, but that it is an exemption of the land itself, when used as a homestead.   *Gregg* v. *Bostwick*, 33 Cal. 225 ; *Beecher* v. *Baldy*, 7 Mich. 488.

It is justly said that homestead laws are to be liberally construed in favor of the exemption granted by the legislature.   But the construction for which the appellant contends in this case seems to go much beyond the purpose of the legislature.   That purpose evidently was to secure to insolvent debtors, against the claims of their creditors, a home of moderate value, out of which they and their families could not be driven.   It was evidently not intended to allow an insolvent debtor, in a city having more than one hundred thousand inhabitants, to hold as a homestead against his creditors a house worth, for instance, $13,000, incumbered to the extent of $10,000, the rental value of which would be, perhaps, $1,000 a year.   The design of

the legislature was to protect the families of insolvent debtors from misfortune, but not to encourage them in habits of expensive living.

We agree, then, with the learned judge of the circuit court, that, where a homestead is worth more than the statutory limit of value, and is incumbered by a deed of trust to such an extent that, after discharging the incumbrance, the amount which would accrue to the owner would be less than the statutory value, the incumbrance is to be deemed an incumbrance of his homestead interest, as well as an incumbrance of the excess above that interest. The homestead interest and the non-homestead interest support the incumbrance in the proportion which the value of the incumbrance bears to the full value of the property. Thus, if the full value of the property (in St. Louis) be $6,000, and the incumbrance be for $3,000, the debtor has a homestead interest as against general creditors to the extent of $1,500; and, to the extent of $1,500, an interest remains in the property subject to execution, exclusive of the incumbrance and of the homestead exemption. It was upon this principle that the learned judge of the circuit court worked out the award of damages in the present case.

There seems to be no error in the record. The judgment is accordingly affirmed. All the judges concur.