Goode v. Lewis.

GOODE *et al.* v. LEWIS, *Plaintiff in Error*.

Division One, November 27, 1893.

1. **Partition:** FINAL JUDGMENT: APPEAL. The order confirming the sale in a partition proceeding is the final judgment from which an appeal lies.

2. ———: MOTION FOR NEW TRIAL. A motion filed in such suit and designated, "Exceptions to the report of sale," but assigning mainly as grounds therefor errors occurring at the trial, will be treated as a motion for a new trial.

3. ———: ———. Such motion when filed at the same term of the entry of the order of confirmation will not be disregarded as to errors occurring prior to its filing, although it was itself filed before the final judgment.

4. **Homestead, Exchange of.** The owner of a homestead acquired by successive exchanges is entitled to the same homestead rights in the one so acquired that he had in the original one.

5. ———: ———: POSSESSION. Where deeds exchanging homesteads have been executed, but one of the parties was prevented from taking possession within a reasonable time by his sickness and death, still, a new homestead is acquired by him in the new property so obtained by the exchange.

6. ———: GENERAL STATUTES, 1865: TITLE: DESCENT. Under the homestead law of 1865 (General Statutes, p. 449), the title to a homestead on the death of the owner passed to his widow, and on her death descended to her heirs.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*John Cosgrove* and *J. H. Johnston* for plaintiff in error.

(1) The courts of this state regard the "intention" of the owner of a homestead when determining whether a homestead has been abandoned. *Duffey v. Willis*,

99 Mo. 132, and cases cited.  (2) Actual, physical
occupancy as a home of the premises, claimed as a
homestead by the party claiming the homestead, is not
in all cases necessary.  *Ruske v. Ruske*, 51 Mich. 541;
*Blum v. Carter*, 63 Ala. 240.  (3) The possession of
plaintiff in error, at the request of his father, coupled
with the intention of Joshua Lewis to move onto and
occupy the land in question, as his homestead, was,
under the circumstances of this case, a sufficient com-
pliance with the homestead laws of this state to con-
stitute the lands described in the petition the home-
stead of Joshua Lewis.   Occupancy need not in all cases
be actual or physical.  *Parsods v. Moses*, 16 Iowa, 440;
*Rhorer v. Brockhage*, 13 Mo. App. 393.  (4) At the
death of Joshua Lewis, a homestead vested in his
widow, Dicey Lewis, absolutely under the statute con-
cerning homesteads then in force.  *Skouten v. Wood*,
57 Mo. 380; *Gragg v. Gragg*, 65 Mo. 343; *Rogers v.
Marsh*, 73 Mo. 64.  (5) This court has jurisdiction of
this case.   The only question to be adjudicated is, was
it necessary that Joshua Lewis should have been
"actually living on the land," with "his family occu-
pying" it as a home before it could become his home-
stead.   This does not involve the title to real estate.
*Schneider v. Hoffmann*, 9 Mo. App. 280; *Rhorer v.
Brockhage*, 13 Mo. App. 397.  Because the judgment
of this court, if for plaintiff in error, might "affect"
the title to real estate, does not necessarily involve
the title to real estate.  *Syenite Granite Co. v. Bobb*,
97 Mo. 46; *Corrigan v. Morris*, 97 Mo. 174.

*Draffen & Williams* for defendants in error.

(1) No motion for a new trial was filed, either at
the term at which the cause was tried and the inter-
loc·itory decree was entered, or at the term at which

the final judgment confirming the sale was rendered. In the absence of a motion for a new trial, this court cannot review the rulings of the trial court as to 'matters of exception, and there is no error in the record proper. The motion should have been filed at the February term, 1890. *Rhorer v. Brockhage*, 15 Mo. App. 16; *State ex rel. v. Hurlstone*, 92 Mo. 327; *State ex rel. v. Burckhart*, 83 Mo. 430. (2) If this court could review the rulings of the trial court, in the absence of a motion for a new trial, and, if the contention of the plaintiff in error was well founded, still, this would be no obstacle to a decree for partition. (3) The land in controversy never became the homestead of Joshua Lewis in his lifetime, and the title thereto upon his death did not vest in fee in his widow, Dicey Lewis, and the court below properly so held. The land was never occupied by said Joshua Lewis and his family. The declarations of law given by the court were proper. 2 Revised Statutes, 1889, sec. 5435; General Statutes, 1865, sec. 1. "It was suggested in the argument that, if one could secure a homestead by purchasing land with the intent to make it his home, he might have a homestead in every county in the state, or in every state in the Union having a homestead law similar to ours; but this suggestion overlooks the question of occupancy. The head of a family may have a tract of land in every county in the state, and intended each for his homestead when he purchased it, but he can only have a homestead in that which he occupies as such." *Finnegan v. Prindeville*, 83 Mo. 517; *Bunn v. Lindsey* 95 Mo. 250; *Tennent v. Prewitt*, 94 Mo. 145; *Smith v. Bunn*, 75 Mo. 559. While the act is to be liberally construed, it can only cover cases within its terms. *Casebolt v. Donaldson*, 67 Mo. 368. Occupancy is essential to impress the land with the character of a homestead. A mere intention to occupy it at a future time is insuf-

ficient. *Hansford v. Holdam*, 7 Rep. 177; Thompson on Homesteads, sec. 248.

BLACK, P. J.—This was a suit between the heirs of Joshua Lewis for the partition of real estate. He died leaving a wife, three children by the first and six by the second marriage. The defendant, Henry W. Lewis, the sole appellant, is one of the children of the last marriage. He insists that the property in question was the homestead of his father, that upon the death of his father the title passed to his mother, and at her death to her children, to the exclusion of the children of the first marriage. On the other hand the plaintiffs insist that the question whether the property was the homestead of deceased, is not open to review, because of a failure of the defendant to file a motion for new trial at the proper time, or even at any time.

The facts bearing upon this preliminary question are these:

The case was tried at the July term, 1890, of the circuit court. The court then made a decree of partition, and at the same time ordered the land to be sold and the proceeds to be distributed according to the rights of the parties as found and set forth in the decree. The following proceedings were had at the February term, 1891. On the seventeenth of that month the sheriff filed his report of sale; on the nineteenth the defendant filed "exceptions to the report of sale," assigning, among others, the following reasons: *Fourth.* Because the court erred in not deciding the law as prayed by this defendant at the trial of the cause. *Fifth.* Because the court erred in declaring the law on the part of the plaintiffs as prayed by them. *Sixth.* Because the sheriff has not reported the names of the parties correctly.

On the twenty-fifth of the same month the court

made an order confirming the sale, and at the same time, as we understand this record, overruled the exceptions, to which ruling defendant duly excepted. He also in due time excepted to the action of the court in giving and refusing instructions.

The first inquiry is whether this motion filed by the defendant and denominated "exceptions to the report of sale" should be treated as a motion for new trial; for, if not so treated, the appellant is here without such a motion. This motion, it will be seen, complains of the action of the court in declaring the law at the trial. Indeed one only of the eight alleged errors goes to any act of the sheriff in making this sale, and that is the sixth. All the other objections go back to alleged errors committed at the trial of the cause. The motion does not, it is true, pray for a new trial, but the objection therein stated that the court erred in declaring the law, if well taken, must result in a new trial. Disregarding the name given to this motion, it is in substance and effect a motion for new trial. It seems to have been so treated by the parties in the circuit court, for there was no effort made to strike it from the files, or to strike out any part of it. We think the motion should be treated here for what it is in substance and effect, that is to say, a motion for new trial.

The next question is whether the motion was filed at the proper time. The order of the court confirming the sale, or, what is the same thing, directing the payment of costs and the distribution of the money in the hands of the sheriff, is the final order from which an appeal lies. *Murray v. Yates*, 73 Mo. 14; *Turpin v. Turpin*, 88 Mo. 338; *Holloway v. Holloway*, 97 Mo. 639. The order of the court confirming the report of sale in this case was made at the February term, 1891, and it

follows that the motion for new trial was properly filed
at that term.

But it is again insisted that it was filed out of
time, because filed five or six days before the order of
confirmation was entered. A motion for new trial
must be made within four days after final judgment,
and usually it is not filed until after such judgment is
pronounced, but it does not follow that it must be
disregarded because filed earlier than the practice
requires. It was certainly good and sufficient to
preserve errors committed at and prior to the time
when it was filed; and hence good to preserve the
rulings of the court in giving and refusing instructions.

The facts disclosed on the trial are to the following
effect: In March, 1868, the land in question was
owned by one Robertson. Henry W. Lewis, son of the
deceased, rented it from Robertson for one year from
March 1, 1868, and went into possession as the tenant
of Robertson.

Joshua Lewis, the deceased, owned and resided
upon another parcel of land, the same being his home-
stead. In November, 1868, Joshua Lewis and Robert-
son exchanged lands, and the deeds were then made
consummating the exchange. Each parcel was within
the homestead limit, both as to quantity and value.
At the date of these deeds, Joshua Lewis intended to
move to and reside upon the land so acquired of Rob-
ertson as soon as he recovered from his then sickness.
He died on the twenty-first of January, 1869, some two
months after the date of the exchange deeds. He was
still living in the old homestead at the time of his
death, and had not removed to the Robertson land
because of his continued sickness. He left his second
wife surviving, but no minor children. This Robert-
son land was all the land he owned when he died.

Henry W. Lewis, the tenant of Robertson and son

of the deceased, remained on the land at the request of his father. The widow moved upon the land shortly after the death of her husband, and resided thereon with her son, Henry W. Lewis, until her death, in 1889.

It is not necessary to set out the instructions given and refused. The question presented by them is whether, under the circumstances just stated, the property in question was the homestead of Joshua Lewis at the time of his death. He had never been in the actual occupancy of it, but it stands conceded that he exchanged a homestead for it, that he intended to remove to and reside upon it, and this intention was only defeated by his death occurring two months after the exchange of properties.

Actual occupancy is necessary to create and bring into existence a homestead exemption; and ordinarily an unexecuted intention to move upon and occupy property is not sufficient to create such exemption. But in this case we are not dealing with an original acquisition of a homestead. It stands conceded that the deceased had acquired a homestead which he exchanged for a new one. Says Thompson: "Exceptional circumstances may arise, however, where the unexecuted intentions of the claimant may be construed into the legal equivalent of actual occupancy of the premises claimed. As when the statute authorizes a change of homestead by sale and investment of the proceeds in a new place of residence, the rights of the owner may be preserved as against existing creditors during the occurrence of the change." Thompson on Homesteads and Exemptions, sec. 247.

Under our statute, a housekeeper or head of a family, having a homestead, may acquire a new one with the consideration derived from the sale or other disposition of the old one, and the new homestead is exempt as to all debts to which the old homestead

would not have been liable. Such was the law when Joshua Lewis died. General Statutes of 1865, sec. 8, p. 451. The policy of the statute is to allow one homestead to be exchanged for another with a continuous exemption. The owner of a homestead acquired by successive exchanges, is entitled to the same homestead rights in the one so acquired that he had in the original one. *Creath v. Dale*, 84 Mo. 349.

It necessarily requires an interval of time to move from one place of residence to another. In view of this fact, and to carry out and give effect to the policy of the law in allowing one homestead to be exchanged for another, and to giving the claimant all the homestead rights in the new one that he had in the old, a reasonable time must be allowed to accomplish the change of residence. What will be a reasonable time, must, to a great extent, depend upon the circumstances of the particular case.

In this case the deceased was sick at the time he exchanged his then homestead for the Robertson property. The Robertson property was then in possession of the son of the deceased. The fact is conceded that deceased intended to move and reside upon the property acquired from Robertson, and this intention becomes important in this case, for it shows beyond doubt that the deceased in making the trade simply exchanged one homestead for another. The intention of the deceased to move upon the newly acquired property was defeated only by his continued illness. Under these circumstances the property received in exchange for the old homestead must be deemed a new homestead. To hold otherwise, is to disregard the object and purpose of the law, and defeat rights which the law gives to the widow.

The property being the homestead of the deceased at the time of his death, the title passed to his surviv-

ing widow in fee, under the law as it then stood; and at her death the title passed to her heirs. The judgment is therefore reversed and' the cause remanded.. BARCLAY, J., absent. The other judges concur.