THE STATE OF MISSOURI ex rel. J. G. SCHNEIDER, Respondent, v. JAMES HULL, Appellant.

Kansas City Court of Appeals, May 11, 1903.

1. **Homestead**: MORTGAGE: EXEMPTION: REINVESTMENT. The head of a family is entitled to the surplus arising from foreclosure sale under mortgage of his homestead if he intends to use such surplus in the purchase of another homestead, but without such intention he is only entitled to the claim under the statute exempting personalty.

2. ———: ———: ———: ———: WIDOW AND CHILDREN. The exemption right of the husband and father should not be confused with the right of the widow and minor children, which becomes a vested estate on the death of the father.

3. ———: ———: SURPLUS: EXECUTION: LIABILITY OF OFFICER. A sheriff foreclosed a school mortgage on a homestead leaving a surplus in his hands after satisfying the school debt. At the same time he had in his hands an execution against the mortgagor who claimed the surplus as exempt and to whom the sheriff turned over such surplus. *Held*, he was not liable to the execution creditor for not applying the money on the execution since the mortagor had a right to claim a homestead exemption in the money; and since the statute does not name the time within which the reinvestment should take place, he had a right to a reasonable time to reinvest.

4. ———: ———: ———: ———: ———: REMEDY OF CREDITOR. If the homesteader did not intend to reinvest, the remedy of

the execution creditor is to seek his money in the usual way that creditors pursue their debtors, since there is no way for a sheriff to test the intention of the homesteader in regard to reinvestment.

5. ———: ———: ———: ———: ———: ———. If a sheriff having an execution in his hands against a homesteader and likewise surplus arising from the sale of his homestead and knows that he does not intend to reinvest, he would be liable for turning over the money to the homesteader and refusing to apply it on the execution.

Appeal from Buchanan Circuit Court.—*Hon. W. K. James*, Judge.

REVERSED AND REMANDED.

*Thos. F. Ryan* and *Brown & Dolman* for appellants.

(1) The defendant is entitled to a homestead exempt from execution in and to the entire tract in controversy, it being less than eighteen square rods and in a city of over forty thousand inhabitants. R. S. 1899, sec. 3616. (2) And that St. Joseph is a city of over one hundred thousand inhabitants, as shown by the last United States census, this court will take judicial notice. Dunne v. Railway, 131 Mo. 1; State ex rel. v. Kerrmann, 75 Mo. 354. (3) The defendant is entitled to such homestead exemption where its value does not exceed three thousand dollars over and above the incumbrance. R. S. 1899, sec. 3616; State ex rel. v. Mason, 88 Mo. 222; Meyer v. Nickerson, 101 Mo. 184; Houf v. Brown, 71 S. W. 125. (4) A homesteader may mortgage his homestead and his rights under the homestead law remain and attach to the equity of redemption, and if the right is asserted prior to the foreclosure he will be entitled to hold the surplus arising at a foreclosure sale not to exceed the value of the homestead. Elstroth v. Young, 83 Mo. App. 253; State ex rel. v. Mason, 83 Mo. 222; Houf v. Brown, 71 S. W. 125; Rose v. Smith, 167 Mo. 81; Meyer v. Nickerson, 101 Mo. 184. (5) The lien of plaintiff's judgment did not attach to defend-

ant's property nor to its proceeds, and the sheriff did right in refusing to recognize his execution. Rogers v. Bank, 82 Mo. App. 377; Macke v. Byrd, 131 Mo. 682. (6) It was not necessary for the sheriff to appoint commissioners before the sale to mark off the homestead. The homestead covered the entire tract and there was nothing left to set off. Houf v. Brown, 71 S. W. 125.

*James W. Boyd* and *Houston & Brewster* for respondent.

(1) Our statutes of homesteads only gives exemption in land. Exemptions in personal property are otherwise provided for. It is the "dwelling house and lands used in connection therewith which the statute exempts." R. S. 1899, sec. 3616; Casebolt v. Donaldson, 67 Mo. 308; Woerther v. Miller, 13 Mo. App. 569; Pearman v. Magee, 79 Mo. App. 210; Munn v. Kelsey, 71 Texas 609; Kirby v. Giddings, 75 Texas 679; Gibbon v. Williamson, 56 Ala. 439. (2) Respondent's contention is that money or other personal property, not being the subject of homestead exemption in kind, is prima facie subject to execution and the burden is on the party claiming it to be exempt, to establish not only that it is proceeds of a homestead, but that it is intended to invest it in another homestead. Smith v. Gore, 23 Kan. 488; Huskins v. Hanlon, 72 Iowa 37; Leer v. Totan, 72 Ky. 101; Watkins v. Blatschina, 40 Wis. 347; Gibbons v. Williams, 56 Ala. 439. (3) It is analogous to the rule which obtains where a homesteader removes from his homestead. In such case such removal is prima facie an abandonment and the burden is on the claimant to prove the intention of returning. Harper v. Forbes, 15 Cal. 202; Benson v. Arthur, 17 Cal. 164; Huskins v. Hanlon, 72 Iowa 37; Jarvis v. Moe, 38 Wis. 448; Kaes v. Grass, 92 Mo. 647; Smith v. Bunn, 75 Mo. 559. (4) It will not do to confound the mere exemp-

tion right created by the first section of the Homestead Act with the rights of widows or minors arising under section 5439, Revised Statutes 1889, now section 3620, Revised Statutes 1899. The first section only confers an exemption while the latter section changes the law of descent and vests absolutely the estate in the widow and minor children. Under the Act of 1866 the widow took a fee simple. Under the Act of 1875 the wife took a life estate jointly with the children during minority. By the Act of 1895 the widow takes an estate for life or widowhood jointly with the minor children. In such cases residence is not necessary. It is an estate in land for life or years, just as any other estate for life or years, and as such may be sold, leased or otherwise disposed of and the proceeds belong to the owner absolutely, to be disposed of at their arbitrary will. Huffschmidt v. Gross, 112 Mo. 649; West v. McMullen, 112 Mo. 405; Elstroth v. Young, 83 Mo. App. 253. (5) In this case there is not only not a scintilla of evidence of any intention on the part of Maney to hold or use the surplus proceeds of the sale for the purchase of another homestead, but it affirmatively appears by appellant's own testimony that Maney simply claimed the proceeds because, and only because, they were the proceeds of the homestead voluntarily sold and that he wanted and demanded such proceeds for the purpose of paying his debts, boarding-house bill and other expenses.

ELLISON, J.—A judgment was obtained against Thomas Maney in the Buchanan Circuit Court which was afterwards assigned to this relator. Maney was the owner of a homestead which he mortgaged to the school fund of such county for borrowed money, and in which mortgage he empowered the sheriff to sell the land if he defaulted in payment of the sum borrowed. He did default and the sheriff, in pursuance of the power, sold the homestead for $2,017.10 in excess of the sum due on the mortgage. The sheriff at this time had

in his hands an execution on a judgment for $13,000.
But he turned over the surplus sum arising from the
sale under the mortgage to Maney, who claimed it as
exempt under the homestead law. He also claimed
$300 as personal property exemption allowed by stat-
ute in lieu of other property. The relator conceiving
that the sheriff. should have applied the sum on the
execution in his hands, brought this suit against him,
and on trial before the court without a jury and with-
out declarations of law obtained judgment.

The claim of exemption made by Maney amounted,
of course, merely to a claim to the surplus money re-
maining in the sheriff's hands after satisfying the mort-
gage. In this State the head of a family may sell his
homestead and hold the proceeds exempt as the home-
stead itself was, provided he intends to use such pro-
ceeds for the purchase of another homestead. Section
3623, Revised Statutes 1899; Rose v. Smith, 167 Mo.
81; Farra v. Quigly, 57 Mo. 284. And if he mortgages
his homestead with power of sale, and it be sold under
the power, he would be entitled to the surplus proceeds
left over after paying the mortgage debt, provided he
intends to use such surplus in the purchase of another
homestead. The reason for this is that the law gives
him such exemption only in real estate and for a home.
He can not make an exemption for himself outside the
provisions of the law by converting his home into
money, and claim it under his homestead rights. The
statute itself has distinguished between claims of real
estate exemption for a home, and personal property ex-
emption, and it is not for the debtor to abolish the dis-
tinction by changing the character of the property. If,
therefore, the claimant voluntarily converts his real es-
tate exemption into personalty (not for the purpose of
reinvestment in a homestead) he is only entitled to claim
under the statute exempting personalty.

Having a homestead right in an equity of redemp-
tion (State ex rel. v. Mason, 88 Mo. 222), it should logic-

ally follow that he has such right in the money arising from a sale thereof if intended for investment in another homestead. In Casebolt v. Donaldson, 67 Mo. 308, it was perhaps not intended to say that money arising from sale of equity of redemption in homestead was not exempt if intended to be placed in another homestead. At any rate, that case has not been followed in recent years, and has been declared to be overruled by several cases asserting contrary views. Brewing Co. v. Howard, 150 Mo. 445, 450.

And since such matter of intention would lie peculiarly within the knowledge of the debtor, the burden of proof of intention to reinvest in another homestead would be upon him. Huskins v. Hanlon, 72 Iowa 39; First Nat'l Bank v. Baker, 57 Iowa 197; Stevenson v. Maroney, 29 Ill. 532; Amphlett v. Hibbard, 29 Mich. 298; Thompson on Homesteads, sec. 284. The authorities on the question of who has the burden on exemptions generally, are not in harmony, but there seems to be but one view of the particular question here referred to.

The right of a widow or minor children in the homestead of the deceased husband and father should not be confused with the right of the father. The widow and children have not merely an exemption right, but an estate vested in them upon the death of the father. West v. McMullen, 112 Mo. 405; Hufschmidt v. Gross, 112 Mo. 649; Elstroth v. Young, 83 Mo. App. 253.

In this case it clearly appears that Maney had no intention of reinvesting in a homestead the surplus which defendant turned over to him. On the contrary, he used it for other purposes. There can, therefore, be no doubt that if this was a contest by this relator as execution creditor, with Maney as execution debtor, the latter could not claim the surplus as exempt, except the $300 personal property exemption which was duly allowed him.

But this is not a contest with Maney. It is a con-

test with an officer of the law charged with certain duties towards relator as execution creditor, and towards Maney as execution debtor. Relator must show him to be guilty of some breach of duty. Ordinarily, when a sheriff with an execution in his hands comes into possession of money belonging to the execution debtor, it is his duty to apply it on the execution. But the case presented here is not an ordinary one. The defendant, sheriff, held the money as surplus remaining in his hands from the sale of Maney's homestead. It was money for which Maney's equity of redemption in the homestead property had been sold. Maney had a right to claim a homestead exemption in the equity of redemption. And he had the right to claim the homestead exemption in the money arising from a sale of that equity, provided, he intended to invest it in another homestead; and since our statute does not name a time in which this shall be done, he had, as has been frequently decided, a right to a reasonable time in which to reinvest. Goode v. Lewis, 118 Mo. 357; Robinson v. Charleston, 104 Iowa 298, 300.

It would seem, therefore, to be the logical conclusion that the sheriff should turn the money over to him under his claim of exemption. It was only exempt if wanted in acquiring another homestead, and the defendant was justified in assuming that was the purpose of the claim of exemption. If it turned out that such was not Maney's intention, then it was the relator's place, as execution creditor, to seek the money, or other thing in which he may have put it, in any of the usual ways of creditors pursuing their debtors. There was no way for defendant to have tested Maney's intention to purchase another homestead. He could only know that Maney was entitled to it (for certain purposes, it is true) but is it not unreasonable to place upon defendant, a mere executive officer, the duty of deciding upon Maney's rights as they might be governed by his intentions. If Maney used the money for other purposes, it

would then be time for relator to ask of him an exercise of his office to the end that it might be subjected to the debt.

If the defendant sheriff knew, when he turned over the money to Maney, that he did not intend it for reinvestment in another homestead, then he made himself liable to this action. On this head we are not sufficiently satisfied to take definite action here. Maney, in answer to a suggestive question by relator's attorney, stated that he told the sheriff he wanted the money to pay his debts. But he immediately stated that he didn't recollect what he may have told him, save that he knew he notified him of his claim of exemption. We feel that it would be unfair and unjust to put the case against defendant on testimony so uncertain, and we shall accordingly remand the cause that the matter may be made the subject of determination in the trial court.

Reversed and remanded. All concur.