## ELI KLOTZ v. JAMES A. RHODES et al., Appellants.

### Division One, February 29, 1912.

1. HOMESTEAD: Sale: Untimely Reinvestment.  Where a homestead is sold the proceeds must be reinvested in a new homestead within a reasonable time in order to save the latter from execution sale under a judgment upon a pre-existing debt, and a reinvestment in the land in suit six years after the former alleged homestead was sold, absent any excusing circumstances, was not within a reasonable time.

2. ————: ————: ————: Abandonment.  The law permits the exchange of one homestead for another, and the sale of one and the reinvestment of the proceeds in another, and if the acquired homestead is occupied as such within a reasonable time after the exchange, or if the proceeds of the sale of the one is within a reasonable time invested in another, the law will not permit the holder of a debt existing at the time the exchange or reinvestment was made to step in and seize the last-acquired homestead under execution; but the exemption right to a homestead may be lost by abandonment, and likewise may the owner of a homestead who has sold the same be held to have abandoned his right to reinvest the proceeds in another unless he reinvests within a reasonable time; and not only on the ground of abandonment should he be held to have lost a homestead in the last-acquired property unless the investment is made within a reasonable time, but also because long delay effaces evidence to prove or disprove fraud and perjury.

3. ————: ————: Reinvestment: Question of Fact: Deference to Chancellor. Where the chancellor found the fact to be that the money with which the last homestead was acquired did not come from the sale of a prior homestead, and the testimony, though disputed, strongly supports that finding, it will not be disturbed on appeal.

Appeal from Wayne Circuit Court.—*Hon. J. J. Williams,* Judge.

AFFIRMED.

*V. V. Ing* for appellants.

(1) Upon the uncontradicted evidence that the whole of the purchase price of the new homestead, it being the real estate involved in this action, was paid out of the money arising directly from the sale of the former homestead of the defendant James A. Rhodes, the finding, judgment and decree should have been for the defendants. Davis v. Fox, 59 Mo. 125; Drosten v. Mueller, 103 Mo. 624; Fulkerson v. Appington, 104 Mo. 472; Roselle v. Beckmire, 134 Mo. 380; Blount v. Spratt, 113 Mo. 48; State ex rel. v. Jarrot, 183 Mo. 204. (2) The appellate court will consider only competent testimony, and will exclude all other testimony, and will determine the cause according to the preponderence of the competent testimony. Sheridan v. Nation, 159 Mo. 27; Supreme Lodge v. Schworn, 80 Mo. App. 64; Trust Co. v. McDonald, 146 Mo. 467; Hall v. Hall, 77 Mo. App. 600, Givens v. Ott, 121 S. W. 23. (33) The homestead in the farm was not liable for plaintiff's judgment under which the lands in controversy was sold, for the reason that he acquired said lands before the debt for which the judgment was rendered was contracted. Sec. 6711, R. S. 1909; Loring v. Groomer, 142 Mo. 1; Clark v. Thias, 173 Mo. 628. (4) The lands involved in this action, having been paid for with the proceeds of the former homestead, is also exempt from sale under execution on said judgment. Macke v. Bird, 131 Mo. 682; Smith v. Ems, 91

Mo. 579; Bank Co. v. Brown, 165 Mo. 32; Rose v. Smith, 167 Mo. 81. (5) Plaintiff's judgment is not a lien on the new homestead. Burton v. Lock, 162 Mo. 502. (6) Even if only a part of the purchase price paid for the new homestead was paid out of the proceeds of the former homestead, it is *pro tanto* exempt from the lien of plaintiff's judgment and sale under execution thereunder, for the debt was contracted after the former homestead was acquired. Rose v. Smith, 167 Mo. 81. (7) The fact that the deed to the new homestead was made to Nancy Rhodes, the wife of the defendant James A. Rhodes, does not rob him of his homestead rights in the property. Bank Co. v. Brown, 165 Mo. 32; Rose v. Smith, 167 Mo. 81; Chare v. Jennings, 159 Mo. 544; Spratt v. Early, 169 Mo. 357; Peake v. Cameron, 102 Mo. 568; Kendall v. Powers, 96 Mo. 142.

*James F. Green* and *Ernest A. Green* for respondent.

(1) The testimony shows that James A. Rhodes bought the property after the rendition of the Klotz judgment, and paid for it out of his mail earnings, putting the title thereto in his wife's name. The trial court correctly held, therefore, that he had no homestead right in said premises which was exempt from execution under plaintiff's judgment. Sec. 6711, R. S. 1909; Osborne & Co. v. Evans, 185 Mo. 509; Acreback v. Myer, 165 Mo. 685; O'Shea v. Payne, 81 Mo. 516; Bunn v. Lindsay, 95 Mo. 250; Barton v. Walker, 165 Mo. 25; Holland v. Rongey, 168 Mo. 16; Sperry v. Cook, 138 Mo. App. 296. (2) Under the testimony of both defendants, the property could not be claimed as a homestead exempt from plaintiff's debt; a reasonable time only is allowed for the investing of the proceeds of one homestead in another, in order to make the second homestead free from the same debts as was the first. Sec. 6712, R. S. 1909; Zollinger v. Dunnaway,

105 Mo. App. 40; Stanley v. Baker, 75 Mo. 60; State ex rel. v. Hull, 99 Mo. App. 703; Goode v. Lewis, 118 Mo. 357.

GRAVES, P. J.—Plaintiff was a judgment creditor of the defendant James A. Rhodes. The debt originated in 1893, and was reduced to judgment in 1897. This judgment of 1897 was revived in 1902, and under the latter judgment plaintiff caused execution to be issued, which was levied upon the property involved in this suit. At the execution sale, of which defendants had notice, plaintiff purchased the property. His petition is in three counts. All of the property involved was purchased by defendants after the date of the revived judgment. Part of it was deeded to the wife Nancy Rhodes, and part of it to the defendant James A. Rhodes.

The first count of the petition relates to the lands deeded to Nancy Rhodes. It charges that these lands were purchased with the money of James A. Rhodes, and the title taken in the name of the wife to fraudulently hinder and delay plaintiff as the creditor of said James A. Rhodes, and asked the court to decree that the said Nancy held said lands to the use of her husband, and to further decree that plaintiff acquired the title thereto at such execution sale and that the said Nancy had no title therein or thereto.

The second count of the petition covers all the property in dispute and states a cause of action under the old section 650, Revised Statutes 1899.

The third count is one in ejectment, alleging ouster on the 11th day of August, 1907, damages in the sum of $200, and monthly rents and profits at ten dollars.

Defendant James A. Rhodes answered (1) by a general denial of all the facts pleaded except "the rendition of the judgment, the issuance and levy of the execution as alleged in plaintiff's petition, and the sale under said judgment and execution of the land de-

scribed in plaintiff's petition, and the execution of the sheriff's deed thereunder as alleged in said petition, and in the first count thereof" which he admitted; (2) he says that the lands in dispute constitute his homestead and were purchased with the proceeds of a previous homestead, which previous homestead antedated the judgment and debt to the plaintiff. He asks that plaintiff's deed be cancelled as a cloud upon his title.

The answer of Nancy Rhodes was a general denial. Reply to the answer of James A. Rhodes was a general denial.

Judgment went for the plaintiff upon each count of his petition, and the defendants appealed. The evidence we discuss in connection with the points made.

I. To our mind the judgment *nisi* must be affirmed, and this for several reasons. In the first place the defendants claim to have sold what they called a homestead in January, 1899, for $825, and that the property in dispute was purchased with the proceeds of that prior homestead, after the wife had carried the money from 1899 to 1907, when the final payment was made. The principal property in dispute was purchased for $425 in December, 1904, or nearly six years after the sale of the alleged homestead. Defendants claim to have paid $100 down at the time (other evidence is only fifty dollars), and to have assumed a first mortgage for $100, and to have given a second mortgage for $225. The final payment was not made until 1907, but this date is immaterial for the point we have now in view. The plaintiff claims that although it be conceded that defendant Jas. A. Rhodes did have and did sell a homestead in 1899, which homestead was exempt from the plaintiff's debt, yet that he only had a reasonable time in which to reinvest the proceeds of that homestead in another homestead, so as to make the latter execution proof, and that inas-

much as the property in question was not acquired within a reasonable time, such reinvestment does not meet the requirements of the law. In this contention we think the plaintiff is right. The law never contemplated that the proceeds of the first homestead could be carried around in a belt four, five or six years, hid out from taxation, and at the end of six years be put in other property and such property stamped as a homestead as against a pre-existing debt.

Whilst the law allows a person to sell one homestead and purchase another, which other shall be as fully exempted as the first, yet there being no time fixed by the statute for this reinvestment, the law steps in and fixes a reasonable time, as the date for the act of reinvestment and reoccupancy. It is also true that what is a reasonable time for such act of reinvestment and reoccupancy is dependent somewhat upon circumstances, yet it cannot be said that six years, with no excusing circumstances, is a reasonable time.

In Zollinger v. Dunnaway, 105 Mo. App. l. c. 40, ELLISON, J., thus expresses the rule:

"It is true that one may exchange his homestead for another and that reasonable time will be allowed him in which to remove from one to the other. Or, he may sell one homestead with intent to invest the proceeds in another and a reasonable time will be allowed for such purpose. [State ex rel. v. Hull, 74 S. W. 888.] But the idea of occupancy can never become dissociated from the homestead. Its name implies that. The time of going from a former to a later homestead, will, of course, be governed by reasonable circumstances, but the circumstances detailed by defendant do not fill that requisite. In Goode v. Lewis, 118 Mo. 357, the deeds for exchange were made and Lewis intended to remove to his newly acquired place as soon as he recovered from sickness then upon him. He did not recover and in two months died without having carried out his intention. The court held such circumstances

excused the delay and the failure to occupy. Considering defendant's conduct and citizenship in residing elsewhere for several years; that the premises have no house enabling them to be occupied, and no more prospect of ever having than there has been in the past; it would be manifestly unfair to permit him to treat them as a homestead and a bar to the rights of his creditors."

The case of Goode v. Lewis, 118 Mo. l. c. 364, thus states the rule:

"It necessarily requires an interval of time to move from one place of residence to another. In view of this fact, and to carry out and give effect to the policy of the law in allowing one homestead to be exchanged for another, and to giving the claimant all the homestead rights in the new one that he had in the old, a reasonable time must be allowed to accomplish the change of residence. What will be a reasonable time must, to a great extent, depend upon the circumstances of the particular case."

The exemption right to a homestead may be lost by abandonment. One may so abandon the occupancy of his homestead as to lose the exemption right. So too his conduct may be such that in law he will be presumed to have abandoned the idea of reinvesting the proceeds of a homestead in a new homestead. Such is the case at bar.

The evidence discloses that nearly six years elapsed before the defendant James A. Rhodes made any attempt to reinvest the alleged proceeds of an alleged previous homestead in a new homestead. Had he left the original homestead for that length of time, with no act tending to show an intention to resume the possession of the homestead, we should certainly declare as a matter of law that there had been an abandonment of the homestead right. So too we should say under the same facts that if he ever had an intent to reinvest the proceeds in a new home, such intent had

been abandoned. But we are not forced to this analogy under the case law. Not that such is not a proper doctrine, but because the courts have seen fit for other evident and potential reasons to adopt the rule that only a reasonable time should be allowed for the transmission of the funds from one homestead into another. Our cases do not discuss all the reasons to my mind. They proceed upon the well-recognized rule that when time is allowed for doing an act, and no specific time is given by the law, then the law fixes a reasonable time for the doing of the act. This is a good and sufficient legal reason for the rule. But to my mind there is another just as potential. Time effaces the evidence to prove or disprove a given fact. Fraud and perjury is given more latitude if long length of time be tolerated for the transmission of the proceeds of one homestead to another. A great field for perjury and fraud is thereby opened up, and the administration of justice is loth to sanction such conditions. These and perhaps other considerations enter into the now fixed rule that only a reasonable time shall be allowed for the purchase and occupancy of the new homestead. For this we say that the trial court's judgment was right on this theory of the case.

II. But there is another reason for the affirmance of this judgment. Under the evidence it was a contested question whether the property in dispute was purchased with the alleged proceeds of an alleged former homestead. There is much evidence tending to show that it was purchased with other funds. Defendant James A. Rhodes was a rural mail carrier getting sixty dollars per month, and there is evidence that the payments were made in small sums covering a period of nearly three years. There is evidence tending to show that at least two of these mail checks went into these payments. It would seem strange that the wife would carry $825 around in her belt for six years be-

fore the purchase of this property, and that it should then be paid for in small sums covering this period of three years more. It is also strange that they were content to pay eight per cent interest on deferred payments, if they had the money at hand in the original bills as it came to them from the old homestead. The chancellor *nisi* had these witnesses before him, and evidently disbelieved their rather unreasonable story. We are inclined to the view that he did not misjudge the true situation. He has found the fact against them, upon disputed testimony, and we shall not disturb his finding. This disposes of the case without going into a neatly presented question as to whether in law and fact James A. ever had a prior homestead.

Let the judgment be affirmed. All concur.