## FIELD v. GOAT et al.

No. 8920—Opinion Filed May 28, 1918.

(173 Pac. 364.)

1. **Exemptions — Construction of Exemptions—Statutes.**

The exemption laws of this state are to be liberally construed in favor of the exemption.

2. **Homestead — Exemptions — Constitutional Provisions.**

The exemption of a homestead of the family, provided in article 12 of the Constitution, extends to the proceeds of a voluntary sale of such homestead which are in good faith intended, at the time of such sale, to be invested in another homestead, and such proceeds are exempt from seizure by process of garnishment for debts not within the ex-

ceptions provided in article 12 of the Constitution.

(Syllabus by Rummons, C.)

Error from District Court, Hughes County; Geo. C. Crump, Judge.

Action by Tilly Field by Seber Smith, guardian, against Martin Goat and others, with garnishment against Vernon H. Harris. From an order discharging the garnishment and discharging the garnishee, plaintiff brings error. Affirmed.

Diamond & Sherrow, for plaintiff in error.

Anglin & Hall, for defendants in error.

Opinion by RUMMONS, C. The plaintiff in error, plaintiff below, having recovered a judgment against the defendant Martin Goat, caused a writ of garnishment to be served upon one Vernon H. Harris. The garnishee answered showing that he had in his possession $550 belonging to the defendant Martin Goat. Thereafter Martin Goat and Josephine Goat filed answer in said garnishment proceeding, claiming said sum of $550 to be exempt because the same was the proceeds of a voluntary sale of their homestead. The cause was tried to the court upon an agreed statement of facts, stipulating that the money sought to be reached by garnishment was the proceeds of a voluntary sale of the homesteads of defendants and that the defendants at the time they made the sale intended to use the proceeds of such sale in the improvement of another homestead. The trial court found that the funds garnished were exempt, dissolved the garnishment, and discharged the garnishee.

The only question to be determined in this case is whether or not the homestead laws of this state extend to and protect the proceeds of a voluntary sale of the homestead which are intended to be invested in another homestead, from being reached by process of law by creditors of the homestead claimant. There is great want of harmony in the authorities upon this question. Some of this diversity of opinion results from the varying provisions of the homestead laws of the several states. Where, however, there is no express statute extending the exemption of the homestead to the proceeds of a voluntary sale of such homestead intended to be reinvested in another homestead, the authorities are still not in harmony. In perhaps the greater number of jurisdictions the rule is that in the absence of statute expressly extending such exemption to the proceeds of the voluntary sale of the homestead such proceeds are not exempt from seizure by legal process at the suit of a creditor whether they be intended for reinvestment to another homestead or not.

This question seems never to have been passed upon directly by this court. It has however, been determined by this court that the exemption laws are to be liberally construed in favor of the exemption, and where there is doubt as to whether or not property should be exempt such doubt should be resolved in favor of the exemption. Phelan v. Lacey, 51 Okla. 393, 151 Pac. 1070, L. R. A. 1916B, 786; Hoyt v. Pullman, 51 Okla. 717, 152 Pac. 386, L. R. A. 1916B, 1288. Under that rule of construction we feel convinced that in the instant case, to give full effect and vitality to the exemption laws of our state, particularly the exemption of the homestead, which is designated for the protection of the family and of society rather than for the protection of the debtor, the exemption of the homestead provided in our laws must be held to impliedly extend to the proceeds of a voluntary sale of the homestead bona fide intended to be invested in another homestead.

In Watkins v. Blatschinski, 40 Wis. 347, the Supreme Court of Wisconsin held that money due a judgment debtor for the purchase of his homestead, as a part of the consideration therefor, which the debtor designs in good faith to apply to the purchase of another homestead, is not liable to garnishment. Mr. Justice Cole, who delivered the opinion of the court, says:

"At the outset of the discussion, this important fact must be borne in mind, namely, that the laws of this state not only exempt the homestead from forced sale while it is occupied by the debtor and family, but they clearly and distinctly provide that the owner may remove from the homestead; may sell and convey the same to a purchaser; and that such removal or sale and conveyance shall not operate to render the homestead liable to forced sale on execution or other final process issued upon any judgment or decree against the owner. Sections 23 and 30, c. 134, R. S. The statute further provides that no judgment or decree against the owner shall be a lien upon the homestead for any purpose whatever, except in certain specific cases which need not be noticed. The policy of the statute cannot be misapprehended. Its obvious design and plain purpose is to benefit the debtor by securing to him his homestead beyond all liability to forced sale on execution or other process. In case the debtor designs to remove from the homestead for some temporary cause, or to absent himself for a time, the statute permits him to do so (Jarvis v. Moe, 38 Wis. 440): and the statute further enables him to

sell and convey the homestead to a purchaser free from all lien by judgment. It is obvious that this legislation is in the interest of the owner of the homestead, and was intended to confer valuable rights. It is not legislation for the benefit of creditors. Now, is it not plain that the right to sell and convey the homestead free from judgment liens is a barren right, so far as the owner is concerned, if the proceeds of the sale cannot be protected until they reach the hands of the vendor, or while in transition from one homestead sold to another purchased? It certainly seems to us to be a valueless right, if the proceeds of the sale are liable to be attached, or are subject to garnishee process, as soon as the homestead is sold. * * * This undoubtedly is the policy and spirit of the statute, to allow a person to sell one homestead and buy another; and the exemption must cover the change, and protect the proceeds while the transfer is being made. Otherwise the beneficient object of the law would often be defeated, and the owner would derive no possible benefit from the provision which enables him to sell and convey his homestead free from all judgment liens except those specified."

In the case of Becher v. Shaw, 44 Wash. 166. 87 Pac. 71, 120 Am. St. Rep. 982, the Supreme Court of Washington quotes with approval from Watkins v. Blatschinski, supra, and applies the same rule. State v. Geddis, 44 Iowa, 537: Cullin v. Harris, 111 Mich. 20, 69 N. W. 78. 66 Am. St. Rep. 380. Our homestead laws have been interpreted by this court in accord with the provisions of the Wisconsin statutes cited in Watkins v. Blatschinski; it having been repeatedly held that the homestead may be sold and conveyed free and clear of all judgment liens save those excepted in the homestead exemption clause of the Constitution. Gray v. Deal, 50 Okla 89. 151 Pac. 205: Gerlach Bank v. Allen, 51 Okla. 736, 152 Pac. 399: Hedgpath v. Hudson, 61 Okla. 121, 160 Pac. 604. The Wisconsin case is therefore highly persuasive in determining this question.

In Mitchel v. Milhoan, 11 Kan. 617, it is held that the surplus remaining from the sale of the homestead to satisfy a judgment of foreclosure of a mortgage is not liable to be taken under execution to satisfy a judgment which was not a lien on the judgment debtor's homestead, so long as the judgment debtor intended and expected to use said surplus for the purchase of another homestead. In Smith v. Gore, 23 Kan. 488. 33 Am. Rep. 188, it is held that, when a person sells his homestead, without at the time having the intention of using the proceeds of such sale in purchasing another homestead, and has no intention of purchasing another homestead immediately with the funds, such proceeds are not exempt from payment of his debts. Mr. Justice Valentine, who delivered the opinion of the court, says:

"It is true that this court has decided that the proceeds of a homestead sold at forced sale by a sheriff are exempt from the payment of all debts which are not liens upon the homestead, so long as the debtor expects and intends to use such proceeds in procuring another homestead. Mitchell v. Milhoan, 11 Kan. 617. And this doctrine probably ought to be extended to cases where the sale of the homestead is made voluntarily by the owner of the homestead himself. Watkins v. Blatschinski, 40 Wis. 347. But we think the intention to use the proceeds in procuring another homestead should be formed at or before the time of the sale, and the intention should be to procure another homestead with the proceeds immediately. It would not do to form the intention two years after the sale, nor would a present intention to procure the homestead two years afterwards be sufficient If the party himself supposed that he could get along without a homestead, the law would not protect his money or his credits, and exempt them from the payment of his debts, merely because it supposed he needed a homestead. The law does not, in express terms, in any case exempt money or credits, merely because they are proceeds of a homestead. They are exempted only by a sort of equitable fiction drawn from the spirit of the homestead exemption laws, and adopted for the purpose of enabling persons to change their homesteads when they desire. This sort of exemption, however, is not allowed in several of the states. Thomp. Homest. 748-751. In this state the homestead exemption laws are construed liberally; but, giving to them the most liberal construction, the plaintiff in error is not entitled to have the money due on said note and mortgage exempted from the payment of his debts."

In Brenneke v. Duigenan, 6 Kan. App. 229, 49 Pac. 687. Judge McElroy, who delivered the opinion of the Kansas Court of Appeals, says:

" 'Are the proceeds of the mortgage given subject to garnishment for the payment of an ordinary judgment indebtedness?' The homestead was exempt, and Holst and wife had a right to sell the homestead or mortgage the same, and the money derived from such sale or mortgage would be exempt. This fund was exempt. It was not subject to garnishment. The mortgagors had a right to mortgage their home, and use the money in any manner that they saw fit, and this fund was not subject to the garnishment proceedings." State v. Hull, 99 Mo. App. 703, 74 S. W. 888.

While this court, as we have said, has not

passed directly upon this question, yet it was nearly involved in the case of American Surety Co. v. Gibson, 65 Okla. 206, 166 Pac. 112. This court held:

"A married man who owned a farm in Caddo county, and who had lived with his family thereon for about ten years, traded this farm for one located in Canadian county, intending to remove his family thereon and to make the same their home. This Canadian county farm was rented at the time of the trade, and the tenant was occupying the one residence thereon, and for that reason he could not immediately establish the family in the new home. He rented a furnished house in El Reno for one month, and moved his family there, and was intending to go to Cushing for temporary employment, but before he got away, and about ten days after his arrival at El Reno, he was sued upon an unsecured debt, and an attachment was issued and levied upon the farm; he moved to discharge the attachment on the ground that the farm was his homestead, and as such exempt from the attachment. Held, that his motion was well taken, and was properly sustained."

Mr. Commissioner Galbraith, who wrote the opinion of the court, says:

"All the testimony offered at the hearing was that of Thomas A. Gibson. By this it was established that he was a citizen and resident of Oklahoma, and a married man; that he had traded his homestead in Caddo county for this Canadian county farm, with the intention of making it the home of himself and family, and that at the commencement of the action he had no other homestead; that he selected these premises as his homestead, and as evidence of such selection and intention had moved his family from Caddo county to Canadian county, and was prevented from fully carrying out his intent and establishing his new home by a 'temporary obstacle,' namely, the possession of the house on the premises by a tenant, and that he intended to take possession and to establish his home upon this land as soon as this temporary obstacle was removed. His good faith is not questioned. From these facts we submit that it follows that the premises had been invested with the homestead character and were exempt from the attachment. We are therefore constrained to hold that the claim of exemption ought to have been sustained, although the claimant had not actually occupied and used the premises, and that the court was right in so holding."

In the foregoing case the land which was held to be exempt as the homestead of the judgment debtor was clearly the proceeds of an exchange of his former homestead, and if a debtor may be protected in exchanging his homestead for another tract of land which he intends to occupy as a homestead as soon as a temporary obstacle is removed it would logically follow that the proceeds of a sale of a homestead which he intended in good faith to invest in another homestead should be protected to the same extent. It is clear that a sale and reinvestment in another home is as efficacious a method of exchanging homesteads as an exchange of lands, and such method is often more readily available than an exchange in kind.

We are convinced that the judgment of the trial court is in harmony with the interpretation of our homestead laws by this court in numerous cases, and that the trial court committed no error in holding the funds sought to be garnished to be exempt.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.