THOMPSON, Presiding Judge.
 

 Deanna M. Harris (“the mother”) appeals from a judgment entered by the Montgomery Circuit Court divorcing her from Paris L. Harris (“the father”). For the reasons stated herein, we affirm the judgment in part and reverse it in part.
 

 The father and the mother were married on January 9, 1999. Two children (“the children”) were born of the marriage. At the time of the trial of this action, one of the children was nine years old and the other child was three years old. The father also had a daughter from a relationship preceding the parties’ marriage. At the time of the trial, the father’s daughter was 13 years old.
 

 The parties separated in May 2008. On December 10, 2008, the mother filed an action seeking a divorce from the father. The father, acting pro se, filed an answer to the mother’s complaint and a counterclaim for a divorce. Each party sought primary physical custody of the children.
 

 The trial court held a trial of the action on October 27, 2009. At the trial, the mother testified that, during the marriage, the parties had resided in a house that was titled in her name and that she had owned before they married. She testified that she was asking that the trial court award her the house.
 

 The mother testified that, during the marriage, she had a credit card on which the father had accumulated debt. She testified that, although the father was supposed to pay the credit-card balance, he did not do so. She stated that, after the parties separated, she paid off the balance on the credit card in the amount of $1,600. The mother testified that, at most, she charged $200 to the credit card.
 

 Documentary evidence was submitted indicating that the mother earned approximately $35,000 annually. She testified that she worked the second shift, which was from 3:00 p.m. to 11:30 p.m., but that she had applied to work the first shift, which was from 7:00 a.m. to 3:30 p.m.
 

 The mother testified that, at the time of trial, the children spent the night at her house on Tuesdays, Thursdays, Fridays, Saturdays, and Sundays and that they spent the night with the father on Mondays and Wednesdays. She stated that the marital residence, in which she continued to reside, had three bedrooms and that each of the children had his own bedroom in the home. She stated that the father was living in a two-bedroom house with his daughter and that, when the children stayed there, the younger son slept
 
 *733
 
 with the father in the father’s bedroom and the older son slept on a couch.
 

 The mother testified that she had been the primary caregiver of the parties’ children during the marriage. She testified that, since the parties separated, the only support the father had provided for the children was $350 worth of groceries, and she testified that he also had paid for the children’s haircuts. She stated that, when the parties separated, she had asked the father to give her $250 per month for support of the children but that he had refused to do so.
 

 The mother testified that she paid $65 weekly for childcare for the three-year-old child. It was undisputed that the mother paid $45 monthly for family medical insurance. She testified that the father did not contribute toward payment for those items.
 

 The mother testified that the father was presently employed by a security company and that she had helped him with his job by printing flyers for him.
 

 The mother testified that the parties owned two vehicles, one that she primarily had driven and one that the father primarily had driven. She testified that she wanted the court to award one of the vehicles to each of the parties. She testified that she was not seeking alimony from the father.
 

 The father testified that he had accumulated debt of only $700 on the credit card about which the mother had testified and that the mother had accumulated the remainder of the debt on the credit card. He testified that he had paid off the debt he had accumulated on the credit card.
 

 The father testified that, from the time the parties separated in May 2008 until the mother obtained counsel in December 2008, the children spent almost every weeknight with him and the weekends with the mother. He stated that the mother began taking the children during some weeknights after her lawyer had told her that she should do so. The father stated that he had told the mother that there was no basis for giving her child support because he had physical custody of the children 20 days out of each month.
 

 The father testified that, throughout the parties’ marriage, he had provided most of the help with the children’s schooling, such as school projects and homework, and that he had taught the children to read and to write. He- also testified that he had performed the yard work, the cooking, and the laundry for the family during the parties’ marriage.
 

 The father testified that he had been laid off from a job with a delivery company in December 2008 and that he had acquired a new job with the security company in July 2009.
 

 The father stated that he was receiving $225 in unemployment compensation in addition to whatever compensation he received from his job with the security company, which was entirely commission-based. He stated that he had an offer to work with a pharmaceutical company but that he could not.start that job until he obtained a larger vehicle, which he planned to do.
 

 At the end of the trial, the court stated that “Child-Support-Obligation Income Statement/Affidavit” forms (Forms CS^41) and a “Child-Support Guidelines” form (Form CS-42) would be completed before everyone left that day. However, copies of those forms do not appear in the record.
 

 On January 19, 2010, the trial court entered a final judgment divorcing the parties. Among other things, the trial court awarded the parties joint legal and physical' custody of the children. The court concluded that joint custody was
 
 *734
 
 “best after careful consideration of the fact that the mother works from 3:00-11:80 p.m. and as the father has actively been engaged and involved in raising” the children. The judgment provided that the father would have physical custody of the children during the week and that the mother would have physical custody of the children from Saturday morning until Monday morning. The father was to have custody of the children during at least every fifth weekend. The judgment required the mother to pay the father monthly child support in the amount of $476 and to maintain health insurance on the children. The court ordered the parties to divide evenly the $1,600 debt on the credit card, with the father to make eight monthly payments of $100 to the mother. The trial court awarded the father 25% of the equity in the marital residence that had accrued from the date of the parties marriage until their separation, with the mother to pay the father an amount equivalent to that equity. The trial court ordered that the mother would remain the fee-simple owner of the marital residence. The mother appeals.
 

 On appeal, the mother asserts error with regard to the property division and the child-custody provisions of the divorce judgement. The standard by which this court reviews a property division in a divorce action after a hearing at which the trial court received ore tenus evidence is well settled:
 

 “When a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong.
 
 Scholl v. Parsons,
 
 655 So.2d 1060, 1062 (Ala.Civ.App.1995). This ‘presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.’
 
 Littleton v. Littleton,
 
 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court.
 
 Somers v. McCoy, 777
 
 So.2d 141, 142 (Ala.Civ.App.2000).
 

 “.... When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong.
 
 Roberts v. Roberts,
 
 802 So.2d 230, 235 (Ala.Civ.App.2001);
 
 Parrish v. Parrish,
 
 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and
 
 Hall v. Mazzone,
 
 486 So.2d 408, 410 (Ala.1986).”
 

 Stone v. Stone,
 
 26 So.3d 1232, 1235-36 (Ala.Civ.App.2009). Also well settled is the standard by which this court reviews a custody determination in a divorce judgment entered after an ore tenus hearing: “[O]ur review of custody determinations based on ore tenus evidence is quite limited; the trial court’s custody judgment is presumed correct and should be reversed only if the judgment is plainly and palpably wrong.”
 
 Smith v. Smith,
 
 887 So.2d 257, 262 (Ala.Civ.App.2003).
 

 The mother contends that the trial court erred in awarding the parties joint custody of the children. She argues that, in her house, each child has his own bedroom, while, in the father’s house, neither child has a bedroom. Instead, when staying with the father, one of the children sleeps with the father while the other child sleeps on a sofa. She also argues that the father does not have a sufficient income to
 
 *735
 
 provide for the needs of the children. She points out that the father testified that she is a good mother.
 

 In
 
 Graham v. Graham,
 
 640 So.2d 963, 964 (Ala.Civ.App.1994), this court wrote:
 

 “In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent.
 
 Hall v. Hall,
 
 571 So.2d 1176 (Ala.Civ.App.1990). The trial court’s overriding consideration is the children’s best interests and welfare.
 
 Santmier v. Santmier,
 
 494 So.2d 95 (Ala.Civ.App.1986). The factors that enter into the court’s custody determination include the child’s age and sex and each parent’s ability to provide for the child’s educational, material, moral, and social needs.
 
 Tims v. Tims,
 
 519 So.2d 558 (Ala.Civ.App.1987). Likewise, it is proper for the court to consider the ‘characteristics of those- seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.’
 
 Ex parte Devine,
 
 398 So.2d 686, 696-97 (Ala.1981).”
 

 Section 30-3-152(a), Ala.Code 1975, provides, in pertinent part: “The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child.”
 

 In the present case, the trial court had before it evidence indicating that the mother had a job that kept her away from her house from 3:00 p.m. until 11:30 p.m. every weekday. There was also evidence indicating that, during the parties’ marriage, the father had provided most of the educational support for the children and that he had performed the bulk of the domestic duties in the home. Also, there was. .evidence indicating that the custody arrangement the trial court ordered was modeled on the arrangement. the parties had in place between the time of the separation and when the mother’s attorney suggested to her that she exercise more custody of the children. As to the mother’s argument that the father was unable to financially support the children, we note that the father testified that he is now employed, and we also note that the trial court ordered the mother to pay child support to the father.
 

 Based on the foregoing evidence, we conclude that the trial court’s judgment awarding the parties joint custody and dividing the time the children would spend with each parent is not plainly and palpably wrong. As a result, that portion of the judgment is due to be affirmed.
 

 The mother next contends that the trial court erred when it awarded the father 25% of the equity in the marital residence that had accrued between the time the parties married and when they separated. She argues that the father did not present any evidence indicating that he was entitled to “any property of the mother.”
 

 Of property divisions in divorce judgments, this court has written:
 

 “A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court.
 
 Parrish [v. Parrish
 
 ], 617 So.2d [1036] at 1038 [(Ala.Civ.App.]. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property.
 
 Robinson v. Robinson,
 
 795 So.2d 729, 734 (Ala.Civ.App.2001). ‘[W]e note that there is no rigid standard or mathematical formula on which
 
 *736
 
 a trial court must base its determination of alimony and the division of marital assets.’
 
 Yohey v. Yohey,
 
 890 So.2d 160, 164 (Ala.Civ.App.2004).”
 

 Stone,
 
 26 So.3d at 1236.
 

 It appears that the mother argues that the marital residence is part of her separate estate and therefore was not subject to division by the trial court. If that, indeed, is what the mother is arguing, we reject that contention. In
 
 Nichols v. Nichols,
 
 824 So.2d 797, 802 (Ala.Civ.App.2001), this court stated:
 

 “Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage.”
 

 In the present case, it is beyond dispute that the marital residence was used during the parties’ marriage for their common benefit. Thus, although the mother owned the marital residence before the parties’ marriage, it was within the trial court’s discretion to consider the marital residence as a marital asset subject to division between the parties.
 

 Moreover, the trial court limited its award to the father to only 25% of the equity the parties had accumulated in the marital residence during the marriage. It is undisputed that during the marriage, before the parties separated, both parties were employed, and therefore both contributed income to the marriage. That the trial court would award the father 25% of the equity that had accrued in the marital residence during their marriage seems to us to be well within the broad discretion afforded a trial court’s determination on the division of the marital assets.
 

 The mother also argues that the father released any claim he may have had to the marital residence during the trial when, during his testimony, he stated: “And I ask for no property I ever owned. I am not responsible for any debt that she may have. I release my name on any home ownership or vehicle ownership that she may have.” The mother cites no legal authority for this argument, and, as a result, we will not consider it.
 
 See White Sands Group, L.L.C. v. PRS II, LLC,
 
 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”).
 

 Based on the foregoing, we conclude that the mother has failed to demonstrate error with regard to the trial court’s division of the marital estate, and, as a result, the trial court’s judgment is due to be affirmed as to that issue.
 

 Finally, the mother contends that the trial court erred in its calculation of the amount of child support she is required to pay the father when the record lacks any basis for that calculation. We agree. In
 
 Hayes v. Hayes,
 
 949 So.2d 150, 154-55 (Ala.Civ.App.2006), this court wrote:
 

 “The father’s only remaining contention is that the trial court failed to utilize the required child-support-guidelines forms in making its determination of the amount of prospective child support owed by the father. This court has held that if the record does not reflect compliance with Rule 32(E), Ala. R. Jud. Admin, (which requires the filing of ‘Child Support Obligation Income Statement/Affidavit’ forms (Forms CS-41) and a ‘Child Support Guidelines’ form (Form CS-42)), and if child support is made an issue on appeal, this court will
 
 *737
 
 remand (or reverse and remand) for compliance with the rule.
 
 See Martin v. Martin,
 
 637 So.2d 901, 903 (Ala.Civ.App.1994). On the other hand, this court has affirmed child-support awards when, despite the absence of the required forms, we could discern from the appellate record what figures the trial court used in computing the child-support obligation.
 
 See, e.g., Dunn v. Dunn,
 
 891 So.2d 891, 896 (Ala.Civ.App.2004);
 
 Rimpf v. Campbell,
 
 853 So.2d 957, 959 (Ala.Civ.App.2002); and
 
 Dismukes v. Dorsey,
 
 686 So.2d 298, 301 (Ala.Civ.App.1996). Nevertheless, without the child-support-guidelines forms, it is sometimes impossible for an appellate court to determine from the record whether the trial court correctly applied the guidelines in establishing or modifying a child-support obligation.
 
 See Horwitz v. Horwitz,
 
 739 So.2d 1118, 1120 (Ala.Civ.App.1999).
 

 “The record in this case contains only one Form CS-41 prepared by the father; it reflects an amount between $1,200 and $1,400 in monthly income. However, the judgment expressly noted that the trial court had imputed a monthly income to the father of $4,417 and that the actual monthly income of the mother totaled $3,245. Calculating the father’s child-support obligation under Rule 32 based solely on his percentage share of the parties’ combined incomes (as reflected in the judgment) would result in a child-support obligation significantly greater than $625 per month. In fact, no application of the income figures specified by the trial court to the schedule of basic child-support obligations in the child-support guidelines supports the $625 monthly child-support award, and the trial court did not expressly state that it had deviated from the guidelines or state any reasons why a deviation from the guidelines would be necessary.
 
 See
 
 Appendix to Rule 32, Ala. R. Jud. Admin.;
 
 see also Mosley v. Mosley,
 
 770 So.2d 638, 640 (Ala.Civ.App.2000).
 

 “Accordingly, we must reverse the judgment modifying the child-support award and remand the cause for the trial court to properly determine the father’s prospective child-support obligation in compliance with Rule 32, Ala. R. Jud. Admin. The trial court may, in its discretion, compute the obligation according to the guidelines or expressly state the reasons why a deviation from the guidelines is necessary in this case.
 
 See also Harmon v. Harmon,
 
 928 So.2d 295 (Ala.Civ.App.2005).”
 

 In the present case, the trial court awarded the father $476 in monthly child support. Although the trial court indicated that it was going to have the parties prepare Forms CS-41 and a Form CS-42, the record does not include a copy of those forms. Although the record contains evidence regarding the mother’s income, the record is unclear as to the father’s income. We have compared the figures included in the record and the amount of child support awarded to the child-support guidelines contained in the Appendix to Rule 32, Ala. R. Jud; Admin., and we are unable to determine how the trial court arrived at the amount of child support it awarded. As a result, we are obligated to reverse the trial court’s judgment as to the award of child support and remand the cause to the trial court to properly determine the mother’s child-support obligation in compliance with Rule 32, Ala. R.. Jud. Admin.
 

 Based on the foregoing, we affirm the trial court’s judgment as to the award of joint custody of the children to the parties and the division of the marital property, we reverse the trial court’s judgment as to its calculation of child support, and we remand the cause to the trial court for the
 
 *738
 

 entry of a new
 
 judgment -consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.