BRYAN, Judge.
Melinda Wellborn (“the mother”) appeals from a judgment entered by the Clay Circuit Court (“the trial court”) that modified the child-support obligation of John D. Wellborn (“the father”) by decreasing his child-support obligation from $2,000 a month to $829 a month. We reverse and remand.
The record indicates that the parties were divorced by a judgment of the trial court in February 2002 and that, pursuant to that judgment, the mother was awarded primary physical custody of the parties’ minor child and the father was ordered to pay child support. The record further indicates that the divorce judgment was modified twice and that, pursuant to the last modification judgment in May 2006, the father was ordered to pay the mother $2,000 a month in child support.
On January 14, 2011, the father filed a petition to modify his child-support obligation alleging that he had experienced a decrease in income since May 2006 that justified a modification of his child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin. The mother filed an answer denying that the father’s child-support obligation was due to be decreased, and she filed a counterclaim to modify the father’s child-support obligation seeking an in *1124 creased award of child support based on the increased needs of the child and the father’s increase in income. The mother also requested an award of attorney fees.
The record from the ore tenus hearing reveals that the father worked for Well-born Cabinets, Inc. (“the company”), and that he owned a 20% interest in the company. He earned a salary of approximately $92,142 a year. According to Joseph Anderson, a certified public accountant who had worked on the company’s account since 1990, the company had made two large distributions to their shareholders in 2006 and 2007. From those distributions, the father received approximately $400,000 in 2006 and $600,000 in 2007. The record indicates that the father got a small distribution in 2008 but that the father had not received any distributions from the company since 2008. Anderson stated that the company could not make any distributions in 2011 and that he did not believe the company would make any distributions in the foreseeable future. Anderson stated that the company had faced a significant decline and that the company had lost $10 million in 2010.
The father’s income-tax return from 2010 reflects that he had net capital gains totaling $79,012 but that his total capital gains in 2010 equaled $203,000 before any capital losses carried over from 2009 were factored in. The father’s income-tax return from 2009 reveals that he had claimed a capital loss totaling $8,000 but that his actual capital loss had been much larger and that he had carried over that loss in order to decrease his tax burden on the capital gains he had earned in 2010.[1] As of August 9, 2011, the father had earned capital gains totaling $11,000. Anderson and the father testified that there was an enormous amount of fluctuation regarding the amount of capital gains that the father might earn each year, and the father testified that the stock market was 500 points “down” on the date of the hearing. The father’s 2010 income-tax return also indicates that the father received $20,332 in interest, $9,824 in dividends, “other gains” totaling $954, and “fringe benefits” from the company totaling $9,651. The 2010 income-tax return also indicates that the father received a tax refund, but Anderson testified that the tax refund was not actually income to the father because he had to repay that amount to the company.
The father testified that he paid health insurance for the child and that his health-insurance cost was $58 a week. He also testified that he had custody of a 17-year-old child from a previous marriage and that he provided all the financial support for that child. The mother testified that she earned $3,093 a month and that the needs of the child had increased because, as the child had gotten older, it was more expensive to care for him.
The trial court entered a final judgment on September 2, 2011, that made the following specific findings of fact regarding the parties’ competing petitions to modify the father’s child-support obligation:
“2. The Court finds that at the time of the last [ojrder of [m]odification relative to child support, the [father] had received a large financial distribution in the way of a bonus from his employer. The [father] received these large distributions in the years 2006, 2007 and 2008. The Court finds that the [father] has received no bonuses or other lump sum distributions from his employer since *1125 that time and is unlikely to receive any such distributions in the future.
“3. The Court finds that the [fa-therj’s income at this time consists primarily of the wages he receives from ... the company, together with interest and dividends received from various investment accounts. The [father] has received income in the past in the way of capital gains from sale of stock but he has also had losses on his stock investments. The Court notes that the stock market in today’s economy does not appear to offer the [father] an opportunity to receive any capital gains which might provide the [father] with a regular source of income which could be used for the calculation or payment of child support.
“4. Based upon the testimony and the exhibits offered into evidence, the Court finds that the [father’s employer has suffered substantial financial losses recently and the [father], himself, has had substantial losses through his personal investment in [the company],
“5. The Court therefore finds that the[re] has been a material change in the circumstances existing since the rendition of the last [modification judgment] when the child support was set at Two Thousand and 00/100 ($2,000) Dollars per month and that the [modification judgment] should be amended accordingly to bring the amount of child support in substantial compliance with the mandatory child support guidelines of Rule 32 ....”
Based on those findings of fact, and after specifically considering that the father provided support for his 17-year-old child from a previous marriage, the trial court ordered that the father pay $829 a month in child support pursuant to application of the child-support guidelines found in the appendix to Rule 32. The trial court did not specifically rule on the mother’s request for an award of attorney fees.
The mother filed a timely postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., which was subsequently denied by the trial court. The mother timely filed a notice of appeal.
On appeal, the mother presents three arguments for our consideration: (1) that the trial court erred in modifying the father’s child-support obligation without complying with Rule 32(E), Ala. R. Jud. Admin.; (2) that the trial court failed to consider all the father’s sources of income when determining his gross income for purposes of calculating his child-support obligation; and (3) that the trial court erred by failing to compel the father to produce certain documentation in discovery.
“Because the trial court received ore tenus evidence, our review of its judgment is governed by the following principles:
“ ““ “[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” ’ ” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “ ‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’ ” Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). “Additionally, the ore tenus rule does not extend to cloak with a presumption of cor *1126 rectness a trial judge’s conclusions of law or the incorrect application of law to the facts.” Wattman v. Rowell, 918 So.2d at 1086.’ ”
Parker v. Parker, 87 So.3d 581, 588 (Ala.Civ.App.2012) (quoting Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007)).
Initially, we note that the mother does not argue on appeal that the trial court erred in finding that there had been a material change in circumstances sufficient to justify a modification of the father’s child-support obligation. Accordingly, that issue has been waived on appeal. Gary v. Crouch, 923 So.2d 1130, 1136 (Ala.Civ.App.2005) (citing Boshell v. Keith, 418 So.2d 89, 92-93 (Ala.1982)) (“[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.”). Furthermore, to the extent that the mother argues that the judgment is not final because the trial court failed to rule on her counterclaim to increase the father’s child-support obligation, we conclude that the trial court implicitly denied the mother’s counterclaim for an increased award of child support when it granted the father’s request for a downward modification of child support. Moreover, in response to the mother’s argument that the trial court’s judgment is not final because it did not rule on her request for attorney fees, this court has held that a trial court’s failure to rule on a request for attorney fees does not affect the finality of the trial court’s judgment. See Blankenship v. Blankenship, 963 So.2d 112, 114 n. 2 (Ala.Civ.App.2007) (“[A]n unadjudicated claim for an attor-ne/s fee does not affect the finality of a judgment.”).[2]
The mother first argues that the trial court erred in modifying the father’s child-support obligation when the record does not reflect compliance with Rule 32(E).
“ ‘This court has held that if the record does not reflect compliance with Rule 32(E) ... (which requires the filing of “Child Support Obligation Income Statement/Affidavit” forms (Forms CS-41) and a “Child Support Guidelines” form (Form CS-42)), and if child support is made an issue on appeal, this court will remand (or reverse and remand) for compliance with the rule. See Martin v. Martin, 637 So.2d 901, 903 (Ala.Civ.App.1994). On the other hand, this court has affirmed child-support awards when, despite the absence of the required forms, we could discern from the appellate record what figures the trial court used in computing the child-support obligation. See, e.g., Dunn v. Dunn, 891 So.2d 891, 896 (Ala.Civ.App.2004); Rimpf v. Campbell, 853 So.2d 957, 959 (Ala.Civ.App.2002); and Dismukes v. Dorsey, 686 So.2d 298, 301 (Ala.Civ.App.1996). Nevertheless, without the child-support-guidelines forms, it is sometimes impossible for an appellate court to determine from the record whether the trial court correctly applied the guidelines in establishing or modifying a child-support obligation. See Horwitz v. Horwitz, 739 So.2d 1118, 1120 (Ala.Civ.App.1999).’ ”
Harris v. Harris, 59 So.3d 731, 736-37 (Ala.Civ.App.2010) (quoting Hayes v. Hayes, 949 So.2d 150, 154 (Ala.Civ.App.2006)).
*1127 In the present case, the trial court made specific findings of fact in its judgment, including a finding that the father’s income included primarily his salary, interest, and dividends. The trial court specifically found that it would not consider potential income from capital gains because the stock market, as it existed at the time of trial, did not “appear to offer the [father] an opportunity to receive any capital gains which might provide the [father] with a regular source of income which could be used for the ... payment of child support.” The trial court’s judgment also stated that it had taken into account that the father provided health insurance for the child and that the father provided support for a 17-year-old child in his custody.
In his brief on appeal, the father sets forth calculations as to child support using the child-support guidelines that purport to support the trial court’s determination of his child-support obligation. However, the calculations included in the father’s brief on appeal contain a miscalculation of the father’s monthly health-insurance cost, which results in an erroneous calculation of his child-support obligation.[3] When the correct amount of the father’s monthly health-insurance cost is used in the father’s child-support calculations, it does not render a child-support award in the amount of $829 a month.
Because we do not have the benefit of the child-support forms required by Rule 32(E), we cannot determine whether the trial court made the same error in calculating the father’s child-support obligation or if the trial court’s calculation of the father’s child-support obligation was based on figures entirely different from those relied on by the father in his brief. Accordingly, we are unable to determine how the trial court calculated the father’s child-support obligation in the absence of the child-support forms required by Rule 82(E). Because we are reversing the trial court’s child-support determination on other grounds, see discussion infra, we instruct the trial court on remand to comply with Rule 32(E) by including in the record CS-41 and CS-42 forms used in the computation of the father’s child-support obligation.
Next, the mother argues that the trial court erred by failing to include in its calculation of the father’s child-support obligation all the applicable income of the father. Although we are unable to determine, in the absence of the forms required by Rule 32(E), the specific amount of income that the trial court determined that the father earned, it is clear from the judgment that the trial court included at least the income from the father’s salary, interest, and dividends and that the trial court did not include any income from capital gains. Accordingly, we will consider only whether the trial court erred by failing to include income from capital gains in its determination of the father’s child-support obligation.[4]
*1128 Rule 32(B)(2), Ala. R. Jud. Admin., defines “gross income,” for purposes of computing child support as “income from any source, [that] includes, but is not limited to, ... capital gains .... ” This court has held that “the trial court must take into account all sources of income of the parents when computing support obligations” and that “[t]he trial court has no discretion” to ignore sources of income when computing a parent’s child-support obligation. Massey v. Massey, 706 So.2d 1272, 1274 (Ala.Civ.App.1997) (emphasis added).
Despite the fact that a trial court must consider all sources of income of the obli-gor parent, the trial court did not include any income from capital gains in the calculation of the father’s gross income because it found that the stock market in the economy as it existed at the time of the ore tenus hearing would not offer the father an opportunity to receive any capital gains that would provide the father with a “regular source of income” that could be used for the calculation or payment of child support. Although the record supports a finding that the potential for the father to earn a “regular source of income” from capital gains was not guaranteed, we note that it is the very nature of capital gains to fluctuate and to offer no guarantee of income. In the present case, the record revealed that the father had substantial capital losses in 2009, substantial capital gains in 2010, and capital gains as of August 2011 totaling $11,000. If we allowed a trial court to ignore evidence of the existence of income from capital gains simply because there was no guarantee that the obligor parent would have a “regular source of income” from capital gains, it could, in all likelihood, result in child-support judgments that never include income from capital gains because capital gains constantly fluctuate — not only year to year, but month to month and day to day.
Thus, we conclude that the trial court erred by failing to include income from capital gains in the calculation of the father’s gross income. See Bushnell v. Bushnell, 713 So.2d 962, 966 (Ala.Civ.App.1997) (reversing a trial court’s child-support determination because it failed to include income from capital gains as well other sources in determining the father’s child-support obligation). Although the trial court had no discretion to ignore sources of income for purposes of determining the father’s gross income, see Massey, supra, if the trial court had believed that application of the guidelines would have been manifestly unjust or inequitable it could have made a written finding on the record indicating its finding supporting a deviation from the child-support guidelines. See Rule 32(A)(ii), Ala. R. Jud. Admin. However, there is no indication in the record that the trial court intended to deviate from application of the guidelines. Instead, the record clearly indicates that the trial court applied the child-support guidelines but failed to include income from capital gains, i.e., income from every source, in calculating the father’s gross income. Accordingly, the trial court’s judgment calculating the father’s child-support obligation is reversed insofar as it failed to include income from capital gains in its calculation of the father’s child-support obligation.
Finally, the mother argues that the trial court erred by failing to compel the father to produce certain documentation in discovery. In violation of Rule 28(a)(10), Ala. R.App. P., the mother cites no authority to support the argument she makes on appeal. Accordingly, we will not consider this argument further. See State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)) (“[I]t is well settled that a failure to comply with *1129 the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides [an appellate c]ourt with a basis for disregarding those arguments.”).
Accordingly, the trial court’s judgment setting the father’s child-support obligation at $829 a month is reversed, and we remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Anderson testified that $3,000 was the maximum capital loss that could be claimed on the father's 2009 income-tax return.

. Because the mother's request for attorney fees was collateral to the decision on the merits, see Edwards v. Edwards, 999 So.2d 939, 941-42 (Ala.Civ.App.2008), and because it appears that the trial court has not ruled on the mother's request for attorney fees, we decline to address the mother's contention on appeal that the trial court erred by failing to award her attorney fees.

. The father’s brief indicates that $58 x 4.33 = $294, when, in actuality, $58 x 4.33 = $251.14.

. The mother contends that the trial court erred by failing to include income from the father’s tax refund, capital gains, "other gains,” and "fringe benefits” in the father's gross income for purposes of calculating his child-support obligation. Without the required child-support forms, we are unable to determine with certainty that the trial court failed to consider the father's tax refund, "other gains,” and “fringe benefits” (or any combination of those items) in calculating the father’s gross income. Accordingly, we pre-termit discussion of the mother’s argument regarding the trial court's failure to include the tax refund, the "other gains,” and "fringe benefits” in the father's gross income in light of our reversal of the trial court's child-support determination.