OSCN Found Document:IN THE INTEREST OF THE CHILDREN OF KNIGHT

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 IN THE INTEREST OF THE CHILDREN OF KNIGHT
2014 OK CIV APP 2
317 P.3d 210
Case Number: 110544
Decided: 11/15/2013
Mandate Issued: 01/03/2014
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2014 OK CIV APP 2, 317 P.3d 210

IN THE INTEREST OF THE CHILDREN OF:

SARA KNIGHT, Petitioner/Appellee,
v.
DAVID A. LINCOLN, 
JR., Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
SEMINOLE COUNTY, 
OKLAHOMA
HONORABLE GAYLA M. ARNOLD, TRIAL JUDGE

AFFIRMED AS MODIFIED

Preston Saul Draper, SWEENEY, SMITH, DRAPER & CHRISTOPHER, PLLC., Ada, 
Oklahoma, for Petitioner/Appellee,
Mary R. Bundren, BUNDREN LAW FIRM, P.C., 
Tulsa, Oklahoma, for Respondent/Appellant,
Clay Pettis, Assistant District 
Attorney, Wewoka, Oklahoma, for Minor Children.


BRIAN JACK GOREE, Judge:
¶1 Defendant/Appellant, David Lincoln (Father), seeks review of the trial 
court's order awarding child support to Plaintiff/Appellee, Sara Knight 
(Mother), for the support of their minor child. We hold the trial court erred as 
a matter of law (1) in failing to deduct from Father's self-employment income 
the ordinary and reasonable expenses necessary to produce the income, and (2) in 
failing to deduct the corpus in determining the income from the sale of Father's 
ranch. We modify the order to award $1,259.91 per month in child support and 
determine the arrearage to be $45,526.83.
¶2 Mother brought this paternity action on March 12, 2010, seeking support 
for the parties' then twelve-year-old daughter. Father appeared and acknowledged 
paternity. The parties tried the remaining issues on November 4, 2011.
¶3 The trial court filed its journal entry of judgment on February 29, 2012, 
making extensive findings of fact and conclusions of law. It found that the 
parties had lived together with their child until October 2008, but since that 
time the child had lived with Mother while Father had visitation but paid no 
child support. The court made detailed findings as to Father's income for the 
years 2006-2011, and then averaged the years 2008-2011 to impute annual income 
of $198,006.20 to Father. For the purposes of determining child support, the 
court found Father's gross monthly income was $16,500.52, and Mother's was 
$1,953.00. In a separate order incorporated by reference, the trial court 
directed Father to pay Mother $1,221.08 per month in child support plus medical 
support of $102.35 per month, for a total monthly payment of $1,323.43. The 
trial court determined Father owed Mother an arrearage of $47,622.12 for child 
support from November 1, 2008 to February 10, 2012. The court also granted 
Father standard visitation. Father appeals from this order.
¶4 Child support proceedings are of equitable cognizance. Merritt v. 
Merritt, 2003 OK 68, ¶7, 73 P.3d 878, 881. In reviewing 
equitable proceedings, we will affirm the trial court's decision unless the 
record reveals some error of law or the decision is clearly against the weight 
of the evidence. Guymer v. Guymer, 2011 OK CIV APP 4, ¶4, 245 P.3d 638, 639. We will review 
discretionary determinations for abuse of that discretion. Broadwater v. 
Courtney, 1991 OK 39, ¶7, 809 P.2d 1310, 1312. In an equity 
case, whenever we determine that the trial court's decision is in error, "we 
should, whenever possible, render the judgment which, in our opinion, the trial 
court should have entered." Bond v. Bond, 1996 OK CIV APP 3, ¶18, 916 P.2d 272, 276.
I
¶5 Father's first two propositions of error challenge the trial court's 
findings as to his income for child support computation purposes. A person who 
is determined to be a child's father pursuant to the Uniform Parentage Act, 10 O.S. 2011 §§7700-101 to 7800, is 
liable for the child's support and education. 10 O.S. Supp. 2012 §83(A). Pursuant 
to 10 O.S. Supp. 2012 §83(D), the 
amount of support must be set in accordance with the child support guidelines 
(Guidelines) provided in 43 O.S. 
2011 §118. In addition, the trial court must impose liability for support 
for the five years preceding the filing of the action. 10 O.S. Supp. 2012 §83(C).
¶6 There is a rebuttable presumption that the amount of the child support 
award which would result from the application of the Guidelines is the correct 
amount of child support to be awarded. 43 O.S. 2011 §118(A). Child support 
is computed as a percentage of the combined gross income of both parents, and is 
allocated to each parent according to the parent's percentage contribution to 
the combined adjusted gross income. 43 O.S. 2011 §118D(A) and (C). 
Gross income includes both earned income and passive income. §118B(A)(2) and 
(3).[1] In 
computing the gross income of the parents, the court may use whichever is the 
most equitable of actual income, average income for the past three years, 
minimum wage, or imputed income. 43 
O.S. 2011 §118B(C)(1). In imputing income, the court may consider, among 
other things, a parent's willful underemployment, the reliability of evidence of 
income, the parent's past and present employment, the parent's education, 
training, and ability to work, and the parent's lifestyle. §118B(D)(2). The 
court shall include self-employment income and the value of fringe benefits that 
significantly reduce personal living expenses in computing gross income. 
§118B(E) and (F).
¶7 Father contends the trial court erred in imputing income in order to 
determine his child support liability. The record in the present case contains 
evidence from which the trial court could find that Father was willfully 
underemployed. Father's testimony that his income was only $583.00 per month is 
unreliable given other evidence in the record showing that his expenses exceeded 
that amount yet he somehow paid them, and he had unexplained deposits to his 
accounts. In addition, the record contains evidence that his lifestyle was 
incongruent with his claimed income. For example, he paid cash for several 
parcels of real property over the years, including $300,000.00 for the Denver 
condominium in which he currently resides. The trial court imputed current 
income to Father based on the average of Father's actual income for the previous 
four years. Under these circumstances, we are unable to find any abuse of 
discretion in the trial court's basis for imputation of income to Father.
¶8 However, some of the trial court's calculations as to Father's income are 
affected by errors of law. Father contends the trial court erred in failing to 
deduct any business expenses from his self-employment income. Some of Father's 
income was self-employment income from his ranch operation and from rental 
properties. For farm income, the trial court used the gross income that Father 
reported to the Internal Revenue Service (IRS) on his Schedule F Profit or Loss 
From Farming. Pursuant to 43 O.S. 
2011 §118B(E)(1), "ordinary and reasonable expenses necessary to produce 
such income" are deducted from self-employment income in arriving at gross 
income. The determination of business income for tax purposes is not controlling 
for the purposes of child support, and accelerated depreciation is expressly 
excluded from reasonable expenses, while social security tax is specifically 
included. 43 O.S. 2011 
§118B(E)(2).
¶9 We have examined Father's Schedule F for the tax years 2008-2009 and 
conclude that all listed expenditures except those for depreciation, dues, and 
taxes are ordinary and reasonable expenses necessary to produce the farm income. 
Therefore, we deduct farm expenses in the amount of $11,306.00 from Father's 
2008 income and $10,358.00 from his 2009 income. Father's tax returns show he 
paid no social security tax; therefore we make no adjustment for social security 
tax.
¶10 Father also argues the trial court erred in failing to deduct expenses 
from his rental income. The evidence regarding Father's income from his rental 
properties came from his own exhibits. The expenses of generating rental income 
are deductible from gross income for the purpose of child support. 43 O.S. 2011 §118B(E)(1). We find 
all of Father's listed expenses are ordinary and reasonable expenses necessary 
to produce the rental income except for State and Federal taxes. Therefore, we 
deduct rental expenses of $1,755.00 for 2010 and $16,825.00 for 2011[2] from Father's 
income for those years.
¶11 Father argues the trial court erred in attributing the proceeds of the 
sale of his ranch to income, and in failing to deduct the cost basis from the 
proceeds. The statutory language of 43 O.S. 2011 §118B(A)(1) is broadly 
inclusive, defining "gross income" as "earned and passive income from any 
source, except as excluded in this section." The statute lists types of earned 
and passive income, but the lists are not exclusive. §118B(A)(1) and (2). 
Whether net after tax gain from the sale of property is income for the purpose 
of child support computation in Oklahoma appears to be a question of first 
impression.
¶12 In Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 193, 64 L.Ed. 
521 (1920), the U.S. Supreme Court interpreted the meaning of "income" in the 
Sixteenth Amendment, which authorized Congress to tax income. It examined the 
meaning of the term in common usage and concluded that income was "the gain 
derived from capital, from labor, or from both combined,... including profit 
gained through a sale or conversion of capital assets." Id., 252 U.S. at 
207, 40 S.Ct. at 193.[3] Accordingly, capital gains are income for both 
federal and state income tax purposes. 26 U.S.C. §61(a)(3) and 68 O.S. 2011 §2353(10). Most states 
that have considered the question classify realized capital gains as income for 
the purpose of child support computation, including capital gain from the sale 
of a residence.[4]
¶13 We conclude that capital gains are properly included as income for the 
purpose of child support calculation in Oklahoma. Capital gains have 
historically been understood to constitute income and have not been excluded by 
the statute. Therefore the trial court properly included Father's capital gains 
from the sale of his real property in calculating his income.
¶14 The gain from the sale or exchange of capital is the profit from 
the transaction. Eisner v. Macomber, 252 U.S. at 207, 40 S.Ct. at 193. 
The return of the corpus or principal is not income. Thomas v. Thomas, 1996 OK CIV APP 151, ¶9, 932 P.2d 54, 55. Therefore, the 
corpus should be deducted from the net sale proceeds in order to determine the 
amount of the gain. The trial court in the present case properly ruled that the 
corpus should be deducted but, as Mother acknowledges, failed to subtract the 
ranch corpus in performing its calculations. Therefore, we deduct $154,500.00 
attributable to the ranch corpus from Father's income for 2010.
¶15 We do not find any merit in Father's other contentions challenging the 
determination of his income. Father contends the proceeds of the sale of his 
homestead and his ranch were not income because he reinvested the proceeds in 
income-producing property. Father cites no authority for this proposition and 
therefore we will not consider it. However, we will consider the effect of the 
reinvestment of homestead proceeds in another homestead because the Oklahoma 
Constitution, Art. 12, §2, protects the homestead from forced sale for the 
payment of debts.
¶16 The exemption extends to the proceeds of the voluntary sale of the 
homestead which are in good faith intended to be invested in another homestead. 
Field v. Goat, 1918 OK 
315, ¶3, 173 P. 364, 365. 
Although profits from the sale of a homestead are generally exempt from 
attachment by creditors, it does not follow that such profits can never be 
counted as income in the calculation of a parent's child support obligation. The 
purpose of the homestead exemption is to protect the family in its occupancy of 
the home from the improvidence and demands of creditors. Burrows v. 
Burrows, 1994 OK 129, ¶12, 886 P.2d 984, 989. As a matter of 
public policy, the homestead exemption may not be used to avoid supporting the 
children it was created to protect. Id. at ¶15. The record in this case 
shows that Father chose to become cash poor and property rich. He may not use 
that condition to avoid child support. Under these circumstances, the trial 
court did not err in including the proceeds of the voluntary sale of the 
homestead as income for the purpose of calculating child support.
¶17 Father contends the trial court erred in failing to deduct the proceeds 
from the sale of personal property from the ranch proceeds. He points to no 
evidence separating the price of any personal property from the sales price of 
the ranch, and separating the cost of the personal property from that of the 
ranch. Therefore he has failed to show the trial court's findings were against 
the clear weight of the evidence.
¶18 Father next contends the trial court imputed income from dog boarding and 
training and livestock sales twice. The evidence was conflicting as to whether 
he received dog fees from clients other than his father. Where there is 
conflicting testimony, "[t]he trial court is entitled to choose which testimony 
to believe as the judge has the advantage over this Court in observing the 
behavior and demeanor of the witnesses." Mueggenborg v. Walling, 1992 OK 121, ¶7, 836 P.2d 112, 114. The livestock 
income he asserts was imputed twice took place in 2006. The trial court did not 
consider this year in calculating Father's income. We will not consider errors 
"which, if changed, would not affect the result." Mortgage Bond Co. v. 
Stephens, 1937 OK 612, ¶20, 
74 P.2d 361, 367.
¶19 Father next argues the trial court erred in including amounts he received 
from his parents as his income, asserting the amounts were loans. The Guidelines 
specifically include gifts as passive income. 43 O.S. 2001 §118B(A)(3)(l). The 
record is devoid of evidence Father made any payments to his parents on any 
loans. The trial court's finding that Father's parents made gifts of money is 
not against the clear weight of the evidence.
¶20 Father argues the trial court should not have included unemployment 
benefits and wages because he no longer receives them. He also argues the trial 
court should not have included deposits to his bank accounts from unknown and 
unexplained sources. As discussed above, the trial court did not abuse its 
discretion in imputing income to Father based on Father's willful 
underemployment. The inclusion of past unemployment benefits, wages, and 
unexplained deposits are appropriate ways of imputing income under the 
circumstances. We find no abuse of discretion.
¶21 Based on our modifications to Father's income for the years 2008-2011, we 
find Father's total income for those four years was $595,177.81. His average 
yearly income was $148,794.45 and his average monthly income was $12,399.54. The 
parties' combined income is $14,352.54. Pursuant to the Guidelines, the total 
support amount for one child is $1,346.00. Father's percentage share of the 
income is 86%, which makes his share of the child support equal to $1,157.56. 
With the cash medical amount of $102.35 added in, his monthly obligation is 
$1,259.91. The amount of the arrearage is $45,526.83 plus interest as provided 
in the trial court's order.
II
¶22 Father's third proposition is the trial court erred in concluding that 
Father owes $47,622.12 in child support arrearage. He argues the trial court 
failed to consider that the child, as well as Mother's child from a previous 
relationship, spent the entire day at his home while Mother was working, and 
Father provided them three meals a day and clothing from 2008 to 2010. Father 
failed to provide any documentation of his expenditures, and Mother controverted 
his testimony. The trial court was entitled to choose which evidence to believe. 
Its refusal to apply a set-off for Father's care of the children is not against 
the clear weight of the evidence. We do, however, modify the amount of the 
arrearage based on our findings in Part I above.
III
¶23 Father's fourth proposition is the trial court erred in ordering standard 
visitation. He argues standard visitation is inappropriate because he lives in 
Colorado. At trial, he testified as follows:

 
 Q I assume you have no objection to being awarded standard 
visitation?
 A I would hope that would be awarded. We are still very close and very 
 close to [Mother]. I can't believe that would not be the 
case.
¶24 Father makes no showing he made his objection to standard visitation 
known to the trial court. Issues not properly presented to the trial court will 
not be heard for the first time on appeal. Oklahoma Dep't of Sec. ex rel. 
Faught v. Wilcox, 2011 OK 
82, ¶17, 267 P.3d 106, 
110.
IV
¶25 Father's next proposition is the trial court erred when it deviated from 
the Guidelines by failing to state any reason for deviating from the statutory 
cap of $15,000.00 in monthly income. The child support order reflects that the 
trial court did apply the cap. However, based on our modification of the 
findings as to Father's income, the parties' combined monthly income no longer 
exceeds the cap. We have calculated child support without deviating from the 
Guidelines.
V
¶26 Father's last proposition is the trial court erred by adopting Mother's 
proposed findings and conclusions in total as its order. Father argues the trial 
court failed to carefully review the evidence and determine an appropriate 
amount of gross income, and failed to provide a copy of the journal entry to 
Father to review prior to entry.
¶27 The trial court has broad discretion in directing the manner in which a 
journal entry is prepared, including directing counsel for one party to prepare 
a draft. 12 O.S. 2011 §696.2(A). 
Only the trial court needs to sign the order. 12 O.S. 2011 §696.3. The parties' 
approval is not required. §696.3(A)(3). In the present case, Mother submitted 
comprehensive proposed findings of fact and conclusions of law, while Father 
submitted a document stating whether he viewed Mother's proposed findings to be 
true or false. Father's submission could not have been used as a draft order. 
Under these circumstances, we are unable to find any abuse of discretion.
¶28 For the foregoing reasons, the trial court's order is modified to award 
Mother $1,259.91 per month in child support, plus an arrearage of $45,526.83. 
The order is AFFIRMED AS MODIFIED.

HETHERINGTON, P.J., and MITCHELL, J., concur.

FOOTNOTES

[1] 
§118B(A)(2) and (3) provide:
2. "Earned income" is defined as income received 
from labor or the sale of goods or services and includes, but is not limited to, 
income from:
a. salaries,
b. wages,
c. tips
d. commissions,
e. 
bonuses,
f. severance pay, and
g. military pay, including hostile fire or 
imminent danger pay, combat pay, family separation pay, or hardship duty 
location pay; and
3. "Passive income" is defined as all other income and includes, but is not 
limited to, income from:
a. dividends,
b. pensions,
c. rent,
d. 
interest income,
e. trust income,
f. support alimony being received from 
someone other than the other parent in this case,
g. annuities,
h. social 
security benefits,
i. workers' compensation benefits,
j. unemployment 
insurance benefits
k. disability insurance benefits,
l. gifts,
m. 
prizes,
n. gambling winnings,
o. lottery winnings, and
p. 
royalties.

[2] For 
2010, the trial court found Father received $2,995.00 in gross rental income 
from the Josephine Street, No. 103 property. According to Father's exhibit, this 
property rented for $599.00 per month. Therefore the gross rental income 
received represents five months worth of rental income from the property. We 
find the allowable amount of expenses for the property to be $351.00 (total 
expenses of $413.00 minus $62.00 in State and Federal taxes) per month for five 
months, which equals $1,755.00.
For 2011, the expenses allowed for each property are as follows:
Hale Parkway, No. 2F - $2,076.00 (total expenses of $4,836.00 minus $684.00 
in State and Federal taxes, times Father's 50% interest);
Josephine Street, No. 103 - $4,212.00 (total expenses of $4,956.00 minus 
$744.00 in State and Federal taxes);
Josephine Street, No. 209 - $5,371.00 (total expenses of $6,229.00 minus 
$858.00 in State and Federal taxes);
Asbury, No. 104 - $5,166.00 (total expenses of $6,246.00 minus $1,080.00 in 
State and Federal taxes).

[3] The 
Supreme Court later viewed its holding in Eisner as too narrow, but 
useful in distinguishing gain from capital. C.I.R. v. Glenshaw Glass Co., 
348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955).

[4] 
E.g., Longtine v. Yeado, 1997 ND 166, 567 N.W.2d 819, 823 ("Capital gains 
from the house and the profits from the auction sale constitute 'income from any 
source, in any form, ... [including] capital gains' under the broad definition 
of gross income."); Moore v. Moore, 254 S.W.3d 357, 360 (Tenn. 2007) ("We 
now hold that under the Child Support Guidelines all capital gains, including 
those from an isolated transaction, should be considered in calculating gross 
income for the purpose of setting child support."); Wellborn v. Wellborn, 
100 So. 3d 1122, 1128 (Ala. Civ. App. 2012) ("[W]e conclude that the trial court 
erred by failing to include income from capital gains in the calculation of the 
father's gross income."); In re Marriage of Zisch, 967 P.2d 199, 202 
(Colo. Ct. App. 1998) ([T]he court should initially include the amount of the 
gain as a component of the recipient's gross income for the year in which the 
gain was received."); and Clary v. Clary, 54 S.W.3d 568, 574 (Ky. Ct. 
App. 2001) ("[W]e affirm the trial court's order to the extent that James' 
portion of the capital gain on the sale of his farm was included in his gross 
income, but reverse its decision to prorate the amount over his work-life 
expectancy.").





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1996 OK CIV APP 3, 916 P.2d 272, 67 OBJ 1611, Bond v. Bond
Discussed 2011 OK CIV APP 4, 245 P.3d 638, GUYMER v. GUYMER
Discussed 1996 OK CIV APP 151, 932 P.2d 54, 68 OBJ 335, THOMAS v. THOMAS
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1991 OK 39, 809 P.2d 1310, 62 OBJ 1311, Broadwater v. Courtney
Discussed 1992 OK 121, 836 P.2d 112, 63 OBJ 2315, Mueggenborg v. Walling
Discussed 1937 OK 612, 74 P.2d 361, 181 Okla. 419, MORTGAGE BOND CO. v. STEPHENS
Discussed 1994 OK 129, 886 P.2d 984, 65 OBJ 3967, Burrows v. Burrows
Discussed 1918 OK 315, 173 P. 364, 70 Okla. 113, FIELD v. GOAT
Discussed 2003 OK 68, 73 P.3d 878, MERRITT v. MERRITT
Discussed 2011 OK 82, 267 P.3d 106, DEPT. OF SECURITIES ex rel. FAUGHT v. WILCOX
Discussed
Title 10. Children Cite
Name
Level 10 O.S. 7700-101, Short Title
Cited 10 O.S. 83, Mother and Father's Liability to Support and Educate Child - Expenses
Discussed at Length
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 696.2, Judgment, Decree or Appealable Order to be Written - Preparation of Written Documents - Filing - Mailing - Effect
Cited 12 O.S. 696.3, Judgments, Decrees and Appealable Orders That are Filed Should Contain the Following
Cited
Title 43. Marriage Cite
Name
Level 43 O.S. 118, Child Support Guidelines
Discussed 43 O.S. 118B, Gross Income, Inclusions and Exclusions - Imputed Income - Income from Self-Employment - Social Security Title II Benefits
Discussed at Length 43 O.S. 118D, Computation of Child Support Obligation - Percentage of Combined Gross Income of Both Parents - Computation for Each Parent Required - Transportation Expenses - Support Order - Summary Form - Social Security Numbers Required
Cited
Title 68. Revenue and Taxation Cite
Name
Level 68 O.S. 2353, Definitions
Cited